**2021 IL 126446**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 126446)

JARRET SPROULL, Appellee, v. STATE FARM FIRE
AND CASUALTY COMPANY, Appellant.

*Opinion filed September 23, 2021.*

JUSTICE MICHAEL J. BURKE delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Garman, Neville, Overstreet, and Carter concurred in the judgment and opinion.

Justice Theis took no part in the decision.

## OPINION

¶ 1     At issue is whether an insurer may depreciate labor costs in determining the "actual cash value" (ACV) of a covered loss when a homeowner's policy does not define that term. Plaintiff Jarret Sproull filed a putative class action against

defendant, State Farm Fire and Casualty Company (State Farm), in the circuit court of Madison County, seeking declaratory relief and damages for breach of contract. Plaintiff alleged that State Farm improperly depreciated labor costs in determining ACV and concealed this practice from its policyholders. State Farm moved to dismiss the complaint for failure to state a claim and argued that its method of calculating ACV complied with Illinois law. The trial court denied the motion but agreed to certify the following question for interlocutory review:

> "Where Illinois' insurance regulations provide that the 'actual cash value' or 'ACV' of an insured, damaged structure is determined as 'replacement cost of property at time of loss less depreciation, if any,' and the policy does not itself define actual cash value, may the insurer depreciate all components of replacement cost (including labor) in calculating ACV?"

The Appellate Court, Fifth District, reformulated the question to address solely labor costs, rather than all components of replacement cost, and answered the question in the negative. 2020 IL App (5th) 180577, ¶ 41.

¶ 2                                   BACKGROUND

¶ 3        Plaintiff was insured under a homeowner's policy that provided replacement cost coverage for structural damage. Under the terms of the policy, covered losses were paid in two parts. The insured would initially receive an ACV payment but then could receive replacement cost value (RCV) if repairs or replacement were completed within two years and the insurer was timely notified:

> "COVERAGE A—DWELLING
>
> 1. A1—Replacement Cost Loss Settlement—Similar Construction.
>
> a. We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the Declarations, the damaged parts of the property covered ***, subject to the following:
>
> (1) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the

Declarations, not to exceed the cost to repair or replace the damaged part of the property;

(2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the Declarations, whichever is less;

(3) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed ***."

The policy did not define "actual cash value."

¶ 4       According to plaintiff's complaint, he suffered wind damage to his residence on or about December 28, 2015, and timely submitted a property damage claim to State Farm requesting payment for the loss. On or about January 23, 2015, State Farm sent an adjuster to inspect the damage to plaintiff's property. State Farm determined that plaintiff had sustained a covered loss. The adjuster determined that the building sustained a loss with a replacement cost value (RCV) of $1711.54. In calculating ACV, State Farm began with the RCV and then subtracted plaintiff's $1000 deductible and an additional $394.36, including taxes, for depreciation. Plaintiff thus received an ACV payment from State Farm for $317.18. Plaintiff claimed that he was underpaid on his ACV claim because State Farm depreciated labor, which is intangible and thus not subject to wear, tear, and obsolescence. Plaintiff cited Black's Law Dictionary's definition of "depreciation" as a "decline in an asset's value because of use, wear, obsolescence, or age." See Black's Law Dictionary 506 (9th ed. 2009). According to plaintiff, labor may not be depreciated because it is not susceptible to aging or wearing and its value does not diminish over time.

¶ 5       Plaintiff alleged in the complaint that State Farm uses a program called "Xactimate" to calculate replacement and repair costs. The default setting is to apply depreciation to materials only when estimating structural repairs. However,

State Farm's adjuster set the program to also depreciate nontangible items such as labor. According to plaintiff, other property insurers within the State of Illinois do not depreciate intangibles such as labor when adjusting property claims, and State Farm did not used to do so either. The written estimate provided to plaintiff showed 26 line-item repairs. Depreciation for materials and labor was applied to seven of the line items—painting the walls in the dining room, kitchen, hallway, and living room; painting the ceilings in the dining room and kitchen; and removing and replacing fiberboard in the dining room. Depreciation was *not* applied to other items, such as sealing and priming the surfaces to be painted, drywall work, and removing and replacing insulation.

¶ 6        Plaintiff alleged that State Farm conceals its practice of depreciating labor from its policyholders in several different ways. First, State Farm does not state in its written estimates that the Xactimate software has been set to depreciate nontangible items such as labor. Second, State Farm does not separate labor and materials in the estimates provided to policyholders. Third, for obvious labor-only charges such as debris removal or roof tear-off charges, State Farm does not depreciate labor. Plaintiff alleged that State Farm does this to help avoid detection of labor depreciation in other line items.

¶ 7        Plaintiff alleged that State Farm was under an affirmative duty to disclose the manner in which it calculates ACV payments and that State Farm was fraudulently concealing breaches of contract from its policyholders. Plaintiff claimed that State Farm's failure to pay the full cost of labor necessary to repair or replace plaintiff's damaged property in the ACV payment left plaintiff underpaid for his losses. According to plaintiff, State Farm's practice unlawfully discourages policyholders from repairing their property, as they may be left with insufficient funds to commence repairs if excessive depreciation is charged against their claims on top of their deductible obligations. Plaintiff argued that State Farm profits if the consumer fails to seek RCV for his or her claim. The more the ACV payment can be lowered, the less likely it is that the policyholder will be able to make up the difference between ACV and RCV and seek reimbursement later.

¶ 8        Plaintiff proposed a class action on behalf of "All Illinois resident persons and Illinois resident legal entities that received 'actual cash value' payments, directly or indirectly, from State Farm for loss or damage to a dwelling or other structure

located in the State of Illinois, where the cost of labor as defined herein was depreciated." Plaintiff alleged that common questions of law and fact existed as to all putative class members and predominated over any questions affecting only individual class members. According to plaintiff, his claims are typical of the claims of all putative class members.

¶ 9 Count I of the complaint alleged breach of contract. Plaintiff claimed that State Farm breached its contractual duty to pay plaintiff and other putative class members the ACV of their claims by unlawfully depreciating labor costs. Count II sought declaratory relief. Plaintiff sought a declaration that the consumer property insurance contracts of the class members prohibit the deduction of depreciation for labor.

¶ 10 State Farm moved to dismiss the complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2016)). State Farm argued that plaintiff's allegations did not suggest a breach of contract because State Farm's method of calculating ACV fully complied with Illinois insurance regulations and the terms of the policy. For the same reason, State Farm contended that plaintiff was not entitled to declaratory relief. In a supporting memorandum, State Farm explained that the Illinois Department of Insurance (DOI) has promulgated a regulation mandating the "replacement cost less depreciation" method of determining ACV:

> "When the insurance policy provides for the adjustment and settlement of losses on an actual cash value basis on residential fire and extended coverage *** the company shall determine actual cash value *** as follows: replacement cost of property at time of loss less depreciation, if any." 50 Ill. Adm. Code 919.80(d)(8)(A) (2002).

State Farm argued that its method of calculating ACV fully complied with the regulation and that plaintiff was improperly trying to add language to the regulation. According to State Farm, plaintiff was reading the regulation not as "depreciation, if any," but as "depreciation only of the material component of replacement cost." State Farm further contended that, even if plaintiff's reading of the regulation were reasonable, it would have to yield to the DOI's interpretation of it. According to State Farm, the DOI's approval of policy forms that specifically set forth that labor

would be depreciated in determining ACV shows that State Farm's interpretation of the regulation was correct.

¶ 11 State Farm further argued that plaintiff's construction of the policy was unreasonable. State Farm contended that the term "actual cash value" in the policy was not ambiguous because its meaning was supplied by the regulation. [1] Moreover, State Farm contended that, even if the regulation were considered ambiguous, plaintiff's construction was unreasonable. State Farm used the example of a homeowner who sustained damage to a roof that had 20-year shingles on it after the shingles had been on the roof for 19 years. If a new roof would cost $10,000 ($4000 for materials and $6000 for labor), plaintiff's theory would mean that the ACV of the roof was $6000 plus the depreciated value of the shingles, even though the shingles had only one year of their expected life remaining. By contrast, if a depreciation factor of 80% were applied to the entire replacement cost of the roof, this would lead to an ACV payment of $2000, which State Farm contended would better represent the value of the roof.

¶ 12 Finally, State Farm argued that case law supported its calculation. State Farm relied on *Gee v. State Farm Fire & Casualty Co.*, No. 11-cv-250, 2013 WL 8284483 (N.D. Ill. Sept. 23, 2013), in which the court held that sales tax could be depreciated in determining the replacement value of damaged personal property. State Farm also relied on state and federal decisions that held that labor could be depreciated in determining ACV. State Farm acknowledged that there was also state and federal authority supporting plaintiff's position but argued that the cases State Farm relied on had rejected the premises of plaintiff's theory as unreasonable.

¶ 13 The trial court denied the motion to dismiss. In a written order, the trial court explained that it found the policy ambiguous because it did not define the term "actual cash value." The court believed that both sides had put forth reasonable explanations of the term, and therefore it was required to construe the term in favor

---

[1]State Farm acknowledged that it had recently amended its homeowner's policy language in Illinois to explain that all components of replacement cost, including labor, are subject to depreciation in calculating actual cash value. However, State Farm argued that this revision could not be interpreted as an admission that the language in plaintiff's policy was ambiguous. See *Obenland v. Economy Fire & Casualty Co.*, 234 Ill. App. 3d 99, 107 (1992) ("it would be unfair and unwise to hold that an attempt by an insurance company to improve the language contained in its policy constituted an admission that the original language was ambiguous").

of the insured. The court found plaintiff's interpretation reasonable because an insured "armed only with policy language and everyday meaning of words used could reasonably have understood depreciation in its everyday sense applies only to physical deterioration because labor does not sustain physical deterioration since *** it is not a physical component." The trial court agreed with State Farm that, because the term was undefined in the policy, the regulation promulgated by the DOI supplied the definition. Nevertheless, the court did not believe that the regulation answered the question before the court. The regulation does not address whether labor may be depreciated, and the court noted that DOI, unlike other state departments of insurance, has not given any guidance on how to interpret the regulation. The trial court found persuasive the state and federal decisions that held that labor may not be depreciated in determining ACV. The court agreed with those decisions that, when an insurer fails to define ACV, that term should be construed in favor of the insured. The court stated that it would not assume the responsibility of defining a term that State Farm had an opportunity to draft more specifically to align with its depreciation practices. The court also found that State Farm's definition was inconsistent with indemnity principles, as it would leave the insured with a significant out-of-pocket loss. The court noted that the purpose of indemnity is to place the insured in the position he was in before the loss. The court found that proper indemnification requires paying the cost of materials depreciated for wear and tear, plus the cost of their installation.

¶ 14    State Farm later moved to certify a question of law pursuant to Rule 308(a) (Ill. S. Ct. R. 308(a) (eff. July 1, 2017)). The trial court granted the motion, determining that its order denying the motion to dismiss involved a question of law over which there was a substantial ground for difference of opinion and that an immediate appeal would materially advance the ultimate termination of the litigation. The parties proposed different wording for the certified question, and the trial court chose to certify the question as proposed by State Farm. The appellate court initially denied leave to appeal, but this court entered a supervisory order directing the court to hear the appeal.

¶ 15    The appellate court issued an opinion affirming the trial court. 2020 IL App (5th) 180577. The appellate court determined that the question certified by the trial court was too broad, as it asked whether *all* components of replacement cost could be depreciated. Because the parties limited their arguments to whether labor could

be depreciated when a policy does not define ACV, the court reformulated the question and answered only that question. *Id.* ¶ 41.

¶ 16    Based on case law and dictionary definitions, the appellate court determined that the plain and ordinary meaning of depreciation in an insurance context is "a reduction in value of a property because of aging and wear and tear to the physical structure of that property." *Id.* ¶ 35. The court held that State Farm had not demonstrated that it had incorporated the DOI's ACV regulation into its policy. *Id.* ¶ 36. Nevertheless, the court held that the regulation did not support State Farm's position because it referred to the " 'replacement cost of *property* at time of loss less depreciation, if any.' " (Emphasis in original.) *Id.* Because property is something tangible, the court held that "actual cash value" referred to an asset that can lose value over time due to wear and deterioration and did not refer to services such as labor. The court held that this interpretation was consistent with State Farm's policy language that defined "property damage" as " 'physical damage to or destruction of *tangible* property, including loss of use.' " (Emphasis in original.) *Id.* The court determined that a reasonable insured would understand "depreciation, if any" to describe the depreciation of physical, tangible materials, particularly where the language follows the word "property." *Id.* The court believed that State Farm was applying a "technical definition of depreciation that is not evident in the language of the policy or in the regulation upon which it relies." *Id.* ¶ 39. Finally, the court stated that its resolution of the question was "in keeping with the primary purpose of an indemnity clause in an insurance contract." *Id.* Accordingly, the appellate court answered the certified question in the negative and concluded:

> "Where Illinois's insurance regulations provide that the 'actual cash value' of an insured, damaged structure is determined as 'replacement cost of property at time of loss less depreciation, if any,' and the policy does not itself define actual cash value, only the property structure and materials are subject to a reasonable deduction for depreciation, and depreciation may not be applied to the intangible labor component." *Id.* ¶ 41.

¶ 17    We allowed State Farm's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2020). Additionally, we allowed United Policyholders to file an *amicus* brief in support of plaintiff's position, and we allowed a joint *amicus* brief in support of defendant's position by the American Property Casualty Insurance Association, the

National Association of Mutual Insurance Companies, and Allstate Insurance Company. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 18                                    ANALYSIS

¶ 19        This appeal arises on a certified question and requires us to construe common insurance policy language. When this court accepts an appeal under Rule 308, the scope of our review is broad and not limited to determining how the circuit court's question should be decided. *Crim v. Dietrich*, 2020 IL 124318, ¶ 18; *Schrock v. Shoemaker*, 159 Ill. 2d 533, 537 (1994). The rules applicable to contract interpretation govern the interpretation of an insurance policy. *State Farm Mutual Automobile Insurance Co. v. Elmore*, 2020 IL 125441, ¶ 21. Our primary objective when construing an insurance policy is to ascertain and give effect to the intention of the parties, as expressed in the policy language. *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). The construction should be a natural and reasonable one. *De Los Reyes v. Travelers Insurance Cos.*, 135 Ill. 2d 353, 358 (1990). Undefined terms will be given their plain, ordinary, and popular meaning; *i.e.*, they will be construed with reference to the average, ordinary, normal, reasonable person. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 115 (1992). The court will not adopt an interpretation that "rests on 'gossamer distinctions' that the average person, for whom the policy is written, cannot be expected to understand." *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 433 (2010) (quoting *Canadian Radium & Uranium Corp. v. Indemnity Insurance Co. of North America*, 411 Ill. 325, 334 (1952)). If the policy language is susceptible to more than one reasonable meaning, it is considered ambiguous and will be construed strictly against the insurer. *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 293 (2001). Indeed, "[w]here competing reasonable interpretations of a policy exist, a court is not permitted to choose which interpretation it will follow. [Citation.] Rather, in such circumstances, the court must construe the policy in favor of the insured and against the insurer that drafted the policy." *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 141 (1999). Our review is *de novo*. See *Addison Insurance Co. v. Fay*, 232 Ill. 2d 446, 451 (2009) ("The construction of a provision of an insurance policy is a question of law, subject to *de novo* review."); *Rozsavolgyi v. City of Aurora*, 2017

IL 121048, ¶ 21 ("certified questions are questions of law subject to *de novo* review").

¶ 20     The question before us has been the subject of much litigation, and it has divided the state and federal courts. Before we proceed to an analysis of the issue, we address two preliminary matters. First, we consider here only whether labor may be depreciated under a policy that does not define ACV to expressly include labor depreciation. Second, the appropriate method of calculating ACV is that set forth in the ACV regulation. The appellate court held that State Farm had not demonstrated that it had incorporated the regulation into its policy. 2020 IL App (5th) 180577, ¶ 36. However, as State Farm points out, a "basic rule of the construction of contracts and a material part of every contract is that all laws in existence when the contract is made necessarily enter into and form a part of it as fully as if they were expressly referred to or incorporated into its terms." *Illinois Bankers Life Ass'n v. Collins*, 341 Ill. 548, 552 (1930). Moreover, plaintiff concedes that replacement cost less depreciation is the proper method for determining ACV in Illinois.

¶ 21                                    *Redcorn*

¶ 22     The first case to address this issue was the Oklahoma Supreme Court's decision in *Redcorn v. State Farm Fire & Casualty Co.*, 2002 OK 15, 55 P.3d 1017 (2002). In that case, the plaintiff suffered damage to his roof in a storm. He was insured under an ACV policy with State Farm.[2] *Id.* ¶ 3. He received an ACV payment that included a deduction for depreciation for both materials and labor. *Id.* Redcorn brought an action in federal court alleging that only the materials component of a roof replacement should be subject to depreciation. The district court certified the question to the Oklahoma Supreme Court. *Id.* ¶ 1. The court ruled in favor of State Farm in a 5 to 3 decision. *Id.* ¶¶ 15-18.

¶ 23     The majority noted that, in Oklahoma, "actual cash value" is determined by the "broad evidence rule." *Id.* ¶ 7. Under this rule, all relevant factors are considered in

---

[2]Under an ACV policy, an insured is paid only the actual cash value of his loss. Under a typical RCV policy, the insured initially receives an ACV payment but can also receive full replacement costs if he makes the repairs within a designated time.

determining ACV, including "purchase price, replacement cost, appreciation or depreciation, the age of the building, the condition in which it has been maintained and market value." *Id.* The plaintiff argued that depreciating labor was inconsistent with principles of indemnity, which seeks to place the insured in the same position he was in if no loss had occurred. *Id.* ¶ 8. The plaintiff argued that, to put him in the same position he was in before the loss, he would be given a roof with shingles of the same age and in the same condition. The plaintiff reasoned that, if it were possible to purchase depreciated shingles, the cost of the labor to install them on the roof would be the same as the cost to install new shingles. *Id.* ¶ 10. Thus, the insurer should not be allowed to depreciate labor. *Id.*

¶ 24    The majority rejected this argument. The majority explained that a "roof is the product of materials and labor." *Id.* ¶ 11. The court explained that "depreciation" is the "actual deterioration of a structure by reason of age, and physical wear and tear, computed at the time of the loss." *Id.* ¶ 12. In determining ACV, a relevant consideration is how much expected life the roof has and whether it is in a worse condition than could be expected, given its age. *Id.* The majority rejected the plaintiff's argument that principles of indemnity precluded labor depreciation. The court stated that, "[p]ursuant to the broad evidence rule, a fact-finder is entitled to consider what the life of the destroyed roof, both materials and labor, would have been, as well as any other relevant evidence presented." *Id.* ¶ 13. Finally, the court explained that the plaintiff had purchased an ACV policy and had paid premiums accordingly. *Id.* ¶ 14. The court noted that the plaintiff had insured a roof surface; he did not separately insure materials and labor. *Id.* Moreover, he "did not pay for a hybrid policy of actual cash value for roofing materials and replacement costs for labor." *Id.* The majority believed that the plaintiff would be unjustly enriched if his argument were accepted. *Id.*

¶ 25    Justice Boudreau dissented, joined by two other members of the court. The dissent noted that, pursuant to the broad evidence rule, the court is to consider evidence that logically tends to establish the value of the property at the time of the loss. *Id.* ¶ 5 (Boudreau, J., dissenting, joined by Watt, V.C.J., and Summers, J.). Thus, the question was whether depreciating the cost of labor logically tended to establish the actual cash value of the roof at the time of the loss. *Id.* The dissent rejected the majority's view of a roof as a single product, as a customer cannot go to a store and buy a roof. *Id.* ¶ 6. Rather, a roof is "a combination of a product

- 11 -

(shingles) and a service (labor to install the shingles)." *Id.* The dissent explained that the shingles are logically depreciable because they age and lose value due to wear and tear. *Id.* That is not the case with labor:

> "Labor, on the other hand, is not logically depreciable. Does labor lose value due to wear and tear? Does labor lose value over time? What is the typical depreciable life of labor? Is there a statistical table that delineates how labor loses value over time? I think the logical answers are no, no, it is not depreciable, and no. The very idea of depreciating the value of labor is illogical. The image that comes to me is that of a very old roofer with debilitating arthritis who can barely climb a ladder or hammer a nail. The value of his labor, I suppose, has depreciated over time." *Id.* ¶ 8.

The dissent believed that, to properly indemnify the plaintiff, State Farm should pay him the value of the shingles, depreciated for wear and tear, plus the cost of their installation. *Id.* ¶ 9. In the dissent's view, depreciating labor would leave the plaintiff with "a significant out-of-pocket loss" that was "inconsistent with the principle of indemnity." *Id.*

¶ 26    Justice Summers filed an additional dissent to offer the observation that, before the damage, the insured had a roof with 16-year-old shingles. *Id.* ¶ 1 (Summers, J., dissenting). Thus, the insured was contractually entitled to have on his house 16-year-old shingles or their value in money. *Id.* Justice Summers argued that the insured should not bear any of the cost of installing the shingles, as that would prevent him from being made whole as if the damage had not occurred. *Id.*

¶ 27                          The Case for Labor Depreciation

¶ 28    Since *Redcorn* was issued, state and federal courts have split on this issue, and the courts have generally followed the reasoning of the *Redcorn* majority and dissents respectively. Courts that have adopted the view that labor can be depreciated generally (1) find the term "actual cash value" unambiguous, (2) agree with the *Redcorn* majority's view that materials and labor form an integrated product and that it is not logical to separate labor and materials when applying depreciation, and (3) believe that failing to depreciate labor overcompensates the insured.

¶ 29      For instance, in *Accardi v. Hartford Underwriters Insurance Co.*, 838 S.E.2d 454 (N.C. 2020), the plaintiff was insured under an RCV policy that paid ACV at the time of the loss but allowed the insured to receive RCV if he made the repairs. *Id.* at 455. The insured suffered storm damage to the roof, siding, and garage of his home. *Id.* The definition of ACV was set forth in an endorsement that provided that the insurer will " 'deduct depreciation from the cost to repair or replace the damaged roof.' " *Id.* at 456. The North Carolina Supreme Court concluded that this definition was not ambiguous because it was not susceptible to more than one reasonable interpretation. *Id.* at 457. Rather, the court believed that it unambiguously allowed for labor depreciation. The court saw no basis for distinguishing between materials and labor because "the value of a house is determined by considering it as a fully assembled whole, not as the simple sum of its material components." *Id.* The court believed that the insured would get a benefit for which he did not pay if labor were not depreciated. *Id.* at 457-58.

¶ 30      The Supreme Courts of South Carolina and Nebraska have also found labor to be depreciable. In *Butler v. Travelers Home & Marine Insurance Co.*, 858 S.E.2d 407, 408 (S.C. 2021), the plaintiffs' homes were destroyed by fire. They were insured under RCV policies, but they elected to merely receive the ACV payment. *Id.* The insurer chose to use the replacement cost less depreciation method of determining ACV. *Id.* at 409. The South Carolina Supreme Court acknowledged that depreciation is " 'a decline in an asset's value because of use, wear, obsolescence, or age.' " *Id.* (quoting Black's Law Dictionary (11th ed. 2019)). The court determined that labor costs become "embedded" in the finished product, such that it no longer makes sense to treat them separately. *Id.* at 411. The court believed that it was "impractical, if not impossible," to depreciate for materials only and that the value of the damaged property is "reasonably calculated as a unit." *Id.* In *Henn v. American Family Insurance Co.*, 894 N.W.2d 179, 182 (Neb. 2017), the plaintiff suffered hail damage to her home's roof vent caps, gutters, siding, fascia, screens, deck, and air-conditioning unit. She was insured under an RCV policy that would pay only ACV unless and until repairs were completed. *Id.* The Nebraska Supreme Court applied the "market value" and "broad evidence rule" approaches to determining ACV. *Id.* at 186. Both approaches consider all the facts and circumstances that affect or have a tendency to establish the property's value. *Id.* The court did not believe that the term "actual cash value" was ambiguous, as these approaches for establishing ACV were well-established in Nebraska. *Id.* at 190.

The court concluded that both materials and labor are relevant facts to consider when establishing the value prior to the loss and that the insured should be responsible for the cash difference necessary to replace the old property with new property. *Id.* at 189. The court believed that paying the full cost of labor at the ACV stage would amount to a "prepayment of unearned benefits" because the "policy does not state that the insured will receive the actual cash value of the materials and the replacement cost value of the labor." *Id.* at 190.

¶ 31 The federal cases reaching this conclusion generally apply the same reasoning. For instance, in *Graves v. American Family Mutual Insurance Co.*, 686 Fed. App'x 536, 537 (10th Cir. 2017), the plaintiff was insured under an RCV policy. Her home suffered damage in a hailstorm. *Id.* Applying Kansas law, the Tenth Circuit held that depreciating for materials only would be " 'A Bridge Too Far.' " *Id.* at 538. The court noted that the plain meaning of depreciation is " '[a] decline in an asset's value because of use, wear, obsolescence, or age.' " *Id.* at 540 (quoting Black's Law Dictionary (10th ed. 2014)). The court did not believe that a reasonable insured would expect the insurer to use an unorthodox method of depreciation that depreciated only materials when determining ACV. *Id.* Rather, the court believed that a reasonably prudent insured would understand that depreciation means a decline in the asset's overall value. *Id.* The court stated that the insured would receive a windfall based on labor costs she never incurred if only materials were depreciated, and this would place the insured in a better position than she was in before the loss. *Id.* at 539; see also, *e.g.*, *In re State Farm Fire & Casualty Co.*, 872 F.3d 567 (8th Cir. 2017) (insured under an RCV policy suffered damage to her house's roof, siding, and gutters; court, applying Missouri law, held that indemnity principles require depreciating overall value of the asset to determine the asset's value at the time of the loss); *Papurello v. State Farm Fire & Casualty Co.*, 144 F. Supp. 3d 746 (W.D. Pa. 2015) (plaintiffs were insured under an RCV policy and suffered storm damage to their roof; court, applying Pennsylvania law, determined that, applying replacement cost less depreciation method of determining ACV, labor may be depreciated because it is the value of property—a finished roof—that is at issue; insurer did not agree to pay full replacement costs of labor at ACV stage).

¶ 32                              The Case Against Labor Depreciation

¶ 33            The reasoning is more varied in the analyses of courts that have held that labor may not be depreciated. Generally, though, they tend to view the term "actual cash value" as an ambiguous term that should be construed in favor of the insured. Some courts have agreed with the *Redcorn* dissent that labor is not logically depreciable, while others believe that labor depreciation leaves the insured underindemnified or that labor depreciation makes sense only in states that apply the "broad evidence rule" for determining ACV.

¶ 34            In *Lammert v. Auto-Owners (Mutual) Insurance Co.*, 572 S.W.3d 170 (Tenn. 2019), the insureds suffered storm damage to their homes. The policy for one set of plaintiffs defined "actual cash value" as " 'the cost to replace damaged property with new property of similar quality and features reduced by the amount of depreciation applicable to the damaged property immediately prior to the loss.' " *Id.* at 173. The other policy did not define "actual cash value" but stated that "actual cash value" includes a deduction for depreciation. *Id.* The parties agreed that the proper method to calculate ACV under either policy was replacement cost less depreciation. *Id.* The court noted that Black's Law Dictionary defines depreciation as a " 'reduction in the value or price of something; specif[ically] a decline in an asset's value because of use, wear, obsolescence, or age' " (*id.* at 174 (quoting Black's Law Dictionary (10th ed. 2014))) and that *Redcorn* had explained that depreciation in this context is not the type that is charged off the books of a business but rather refers to the actual deterioration of a structure (*id.* at 174-75 (citing *Redcorn*, 2002 OK 15, ¶ 12)).

¶ 35            The Tennessee Supreme Court surveyed the state and federal case law on the issue and also noted that some states had addressed the issue through regulations or bulletins. *Id.* at 175-78. California has a regulation prohibiting labor depreciation, and Vermont has an insurance bulletin that accomplishes the same thing. *Id.* at 178. Mississippi has an insurance bulletin that provides that, if labor is going to be depreciated, that fact should be clearly stated in the policy. *Id.*

¶ 36            The Tennessee Supreme Court sided with the courts that held that labor may not be depreciated, relying on the familiar rule that, when both parties have presented reasonable interpretations of an insurance policy, the court must adopt the interpretation that favors the insured. *Id.* at 178-79. The court believed that,

since depreciation refers to physical wear and tear, a reasonable homeowner would understand that depreciation would apply only to material goods that can age and experience wear and tear. *Id.* at 178. Taking the term "depreciation" in its ordinary sense, the court held that it applies to physical deterioration. *Id.* The court believed that the insurer was arguing for a technical definition of depreciation that was not evident on the face of the policy. *Id.* at 179. The court quoted from one of its earlier decisions that held that an insured " 'should not have to consult a long line of case law or law review articles and treatises to determine the coverage he or she is purchasing.' " *Id.* (quoting *Harrell v. Minnesota Mutual Life Insurance Co.*, 937 S.W.2d 809, 814 (Tenn. 1996)). The court determined that it was not necessary to determine whether labor logically depreciates or which view accomplishes indemnity. Rather, it was enough that the contract was ambiguous and therefore had to be construed in favor of the insured. *Id.*

¶ 37    The Arkansas Supreme Court reached the same result in *Adams v. Cameron Mutual Insurance Co.*, 2013 Ark. 475, 430 S.W.3d 675. The insureds' home was damaged by a tornado. They were insured under an ACV policy, but the policy did not define "actual cash value." *Id.* at 2. The court held that the term was ambiguous because it was susceptible to more than one reasonable interpretation. *Id.* at 4. The court found convincing the position of the *Redcorn* dissent that labor is not logically depreciable. *Id.* at 6. The court further agreed with the *Redcorn* dissent that depreciating labor would leave the insured with a significant out-of-pocket loss and that indemnification principles support giving the insured the cash value of depreciated shingles and the cost of their installation. *Id.*[3]

¶ 38    In *Hicks v. State Farm Fire & Casualty Co.*, 751 Fed. App'x 703 (6th Cir. 2018), the insureds' homes were destroyed by fire. They were insured under policies that would initially pay ACV but then would provide RCV if the repairs

---

[3]In *Shelter Mutual Insurance Co. v. Goodner*, 2015 Ark. 460, 477 S.W.3d 512, the Arkansas Supreme Court would take things a step further and hold that labor may not be depreciated even when a policy specifically provides that it could be. The court explained that, as it had determined in *Adams* that it is illogical and inconsistent with indemnity principles to depreciate labor, it would be against public policy to allow it, even if the policy provided for it. *Id.* at 5. Arkansas would eventually settle the matter by statute. The Arkansas legislature enacted a statute providing that depreciation may include "the cost of goods, materials, labor, and services necessary to replace, repair, or rebuild damaged property." See Ark. Code Ann. § 23-88-106(a)(2) (West 2017).

were completed. *Id.* at 704. In explaining what ACV is, the Sixth Circuit gave the following example:

> "if a policyholder owned a house with a ten-year-old roof that was destroyed by hail, the ACV would be the price of providing the policyholder with a ten-year-old roof that was not destroyed by hail. However, it is not feasible to buy a ten-year-old roof (or ten-year-old roofing materials) to install on an existing building. This dilemma has led to various valuation methods for the cost of placing policyholders back in their pre-loss position." *Id.* at 706.

The court decided the case under Kentucky law, and similar to Illinois, Kentucky has a regulation that provides that actual cash value is determined as " 'replacement cost of property at the time of the loss less depreciation, if any.' " *Id.* at 707 (quoting 806 Ky. Admin. Reg. 12:095(9)(2)(a) (Aug. 2007)). Neither the regulation nor the policies defined "depreciation."

¶ 39 The Sixth Circuit held that the policies were ambiguous because they incorporated a regulation that did not define depreciation. *Id.* at 708. Thus, the court determined that there were "two levels of ambiguity." *Id.* The contract was ambiguous because it relied "on a regulation that is subject to multiple reasonable interpretations." *Id.* The court thus held that it should be construed in accordance with the insured's reasonable expectations and that a layperson confronted with the policy could reasonably conclude that only the cost of materials would be depreciated. *Id.* at 709. The court agreed with the district court's observation that labor is not subject to wear and tear and that the cost to install a garage with new material would be the same as the cost to install a garage with 10-year-old materials. Thus, labor depreciation results in underindemnification. *Id.* The court distinguished the cases reaching the opposite result, noting that they came primarily from states where the broad evidence rule is applied or where the policies expressly defined ACV. *Id.* at 710. The court agreed with the plaintiffs that the relevant precedents were from jurisdictions like Illinois,[4] Ohio, and Alabama that employ the replacement cost less depreciation method of determining ACV. *Id.* at 710-11. The Sixth Circuit would later reach the same result in a case applying Ohio law. See *Perry v. Allstate Indemnity Co.*, 953 F.3d 417, 422 (6th Cir. 2020) (insured

---

[4]The court was referring to the trial court's decision in the present case. See *Hicks*, 751 Fed. App'x at 711.

suffered water damage to her home; policy provided that payments would be on ACV basis if repairs were not made, and this would include a deduction for depreciation; neither "actual cash value" nor "depreciation" was defined in policy, but Ohio regulation defined ACV as "replacement cost of property at the time of loss, including sales tax, less any depreciation"; court held that it does not matter whose interpretation was more reasonable; the insured's reading had to be adopted because it was a fair reading of an ambiguous term).

¶ 40     In *Mitchell v. State Farm Fire & Casualty Co.*, 954 F.3d 700 (5th Cir. 2020), the Fifth Circuit, applying Mississippi law, also held that the term "actual cash value" was ambiguous and had to be construed against the insurer. In that case, the insured suffered storm damage to her home. *Id.* at 703. Her policy with State Farm paid ACV initially and then RCV if repairs were completed within a specified time limit. *Id.* at 706 n.6. A Mississippi statute defined ACV as " 'the cost of replacing damaged or destroyed property with comparable new property, minus depreciation and obsolescence.' " *Id.* at 704 (quoting Miss. Code Ann. § 83-54-5(a) (2019)). The Fifth Circuit used the following example to demonstrate the parties' different approaches to determining ACV:

"To understand the difference between the two parties' proffered definitions of 'Actual Cash Value,' we will take a hypothetical destroyed roof as an example. Mitchell's interpretation of 'Actual Cash Value' includes depreciation of only the material components of the roof. Suppose the hypothetical roof can be replaced for a cost of $5,000 in materials and $5,000 in labor—a $10,000 roof. Suppose that the destroyed roof was 10 years old and expected to last 20 years. Under Mitchell's interpretation, the Actual Cash Value would be $7,500, because $2,500 would be deducted in depreciation (half of the cost of the materials).

By contrast, State Farm's interpretation of 'Actual Cash Value' includes depreciation of both the materials and the labor in constructing the roof. Using the same example, State Farm's interpretation would yield an Actual Cash Value of $5,000, because $5,000 would be deducted in depreciation (half of the total cost of replacing the roof)." (Emphases omitted.) *Id.* at 706.

The Fifth Circuit noted that its only task was to determine if the insured's interpretation was reasonable, because that interpretation must prevail if it was. The

- 18 -

court determined that the insured's interpretation was reasonable because it restored her to the status she had at the moment before the loss—it gave her $2500 to spend on shingles and $5000 to spend on labor to install them. *Id.* The court rejected the view of courts that have referred to this as a "windfall": "that amount reasonably can be considered proper indemnity rather than a windfall." *Id.* at 706 n.5. The court explained that State Farm's definition, which viewed "depreciation" as the "reduction in the *appraised* or *market* value of the roof prior to the damage," was also reasonable. (Emphases in original.) *Id.* at 707. However, the court found that it was not "so singularly compelling" as to make the insured's interpretation unreasonable. *Id.* Finally, the court rejected State Farm's argument (which State Farm also makes before this court) that the insured's argument negated the policy's two-part payment structure, which provides RCV after repairs are completed. The court pointed out that, under the insured's interpretation, there is still a deduction for the deprecation of materials at the first stage. Thus, homeowners would still have an incentive to complete repairs and receive the difference between RCV and ACV. *Id.* at 706 n.6.

¶ 41                              The Policy Is Ambiguous

¶ 42        Unlike the other courts to side with insureds on this issue, the appellate court in the present case did not find the policy or the regulation to be ambiguous. Rather, the court found that the plain language of the policy and the regulation supported plaintiff's interpretation. The court focused on the regulation's use of the word "property" in the phrase " 'replacement cost of property at time of loss less depreciation, if any.' " (Emphasis omitted.) 2020 IL App (5th) 180577, ¶ 36. The appellate court held that the plain meaning of "property" contemplates something tangible. *Id.* The court noted that this was consistent with the policy's definition of "property damage," which was " 'physical damage to or destruction of tangible property, including loss of use.' " (Emphasis omitted.). *Id.* The court held that an ordinary layperson would reasonably interpret "depreciation" to refer to the depreciation of physical, tangible materials. *Id.*

¶ 43        State Farm also contends that the policy and regulation are unambiguous but supporting the opposite interpretation. State Farm argues that the Black's Law Dictionary definition of depreciation as a "decline in an asset's value because of

- 19 -

use, wear, obsolescence, or age" (Black's Law Dictionary 555 (11th ed. 2019)), contemplates a decline in the overall value of an asset. State Farm contends that "property" is product of both materials and labor and therefore it makes sense to depreciate it only as a whole. Moreover, State Farm contends that the only way to read the regulation's use of the phrase "depreciation, if any" is allowing depreciation to be applied to all components of replacement cost. According to State Farm, plaintiff is improperly adding language to the regulation and reading it as "replacement cost of property at time of loss less depreciation, if any, *applied only to the materials component of replacement cost*."

¶ 44        We disagree with both positions. First, we reject the appellate court's conclusion—unique among courts to consider this issue—that the plain language of the policy and the regulation compels the conclusion that labor may not be depreciated. State Farm has offered a perfectly reasonable interpretation of the policy and regulation reaching the opposite conclusion, and several state and federal courts have agreed with this position. Nevertheless, we also reject State Farm's conclusion that the plain language of the policy and regulation compels its conclusion. We are not persuaded by State Farm's argument that the language "deprecation, if any" mandates a conclusion that labor may be depreciated. As the Sixth Circuit explained when rejecting a similar argument made by another insurance company, this interpretation "just begs the question of what 'depreciation' means in the first place." *Perry*, 953 F.3d at 422. If depreciation is understood to mean the physical deterioration of something tangible (see, *e.g.*, *Dickler v. CIGNA Property & Casualty Co.*, 957 F.2d 1088, 1098 (3d Cir. 1992) (in property insurance context "depreciation is properly defined as physical deterioration"); *Redcorn*, 2002 OK 15, ¶ 12 ("[d]epreciation in insurance law is not the type that is charged off the books of a business establishment, but rather it is the actual deterioration of a structure by reason of age, and physical wear and tear")), then the phrase "depreciation, if any" logically would not include the depreciation of intangible things. From the plaintiff's perspective, it would be State Farm that is adding language to the regulation. State Farm would be reading the regulation as stating "replacement cost of property at time of loss less depreciation, if any, *applied even to intangibles such as labor that do not deteriorate*." We believe that the policy and the regulation it incorporates are susceptible to multiple reasonable interpretations and are therefore ambiguous.

¶ 45 State Farm contends that, even if the policy is ambiguous, it may not be construed against State Farm because the ACV regulation supplies the definition of ACV. State Farm argues that this court should instead defer to the DOI's interpretation of the regulation, which State Farm contends supports its position. State Farm relies on cases such as *Chicago National Life Insurance Co. v. Carbaugh*, 337 Ill. 483, 485 (1929), and *Ramsey v. Old Colony Life Insurance Co.*, 297 Ill. 592, 597 (1921), which held that when policy language is required by the legislature, the rule of construction against the insurance company does not apply. Those cases dealt with an incontestability clause for life insurance policies that was required by the legislature. The Fifth Circuit rejected this same argument when State Farm made it with respect to a definition of ACV that was supplied by a Mississippi statute:

> "In an attempt to avoid the canon that ambiguous terms are construed against an insurance company, State Farm argues that any ambiguity in the term 'Actual Cash Value' should not be construed against it because that term has a court-created legal definition borrowed from a statute, which State Farm of course did not draft. But the cases cited by State Farm are inapposite because those dealt with situations where language in a contract was dictated by statute and the insurer was legally prohibited from altering that language. Here, the ambiguity in the contract between State Farm and Mitchell arose from the fact that State Farm *chose* to borrow a statutory term and *chose* not to define that term with any greater specificity than it is defined in the statute and existing Mississippi case law. As both parties agree, State Farm has always been free to explicitly state in its Mississippi homeowners policies that Actual Cash Value includes labor depreciation, and it did so beginning with policies issued in September 2016." (Emphases in original.) *Mitchell*, 954 F.3d at 705 n.4.

¶ 46 Moreover, even assuming that the rule relied on by State Farm applied in this situation, we are still left with an ambiguous policy. As the Sixth Circuit explained in *Hicks*:

> "[T]he State Farm policies are ambiguous because they do not define ACV but simply incorporate Kentucky's ACV Regulation which does not define depreciation. Thus, there are two levels of ambiguity: the contract is ambiguous

because it relies on a regulation that is subject to multiple reasonable interpretations." *Hicks*, 751 Fed. App'x at 708.

In other words, although the regulation prescribes the method of calculating ACV as "replacement cost of property at time of loss less depreciation, if any," the regulation does not define "depreciation," nor does it prescribe a method for calculating depreciation. State Farm has chosen not to define depreciation in the policy nor set forth how depreciation is to be calculated. And State Farm has not argued that it is bound to a definition of depreciation or method of calculating it that is supplied by statute or regulation. Accordingly, the policy is ambiguous. See also *Perry*, 953 F.3d at 421-23 (when regulation prescribes method of determining ACV but neither the regulation nor the policy defines "depreciation," policy is ambiguous and must be construed against insurer).

¶ 47 That said, were we to agree with State Farm's position that we are simply interpreting a regulation and therefore must defer to the DOI's interpretation, we disagree with State Farm that there is anything to which we would defer. Unlike several other states, Illinois's DOI has not addressed the question of labor depreciation. State Farm argues that we may infer two things from DOI's regular approval of policy forms that provide for payment of ACV without defining the term *or* with a definition expressly allowing for labor depreciation: (1) DOI considers the undefined term ACV to be unambiguous and (2) it believes a policy expressly permitting labor depreciation is consistent with the ACV regulation. As plaintiff points out, however, one could just as easily infer from this that DOI believes that the policy form expressly permitting labor depreciation should be used if the insurer is going to depreciate labor. DOI's approval of both forms does not indicate that DOI believes that labor may be depreciated under the form that does not expressly allow it.

¶ 48 State Farm also relies on a fact sheet from DOI that explains to consumers how an insurance company might calculate the ACV of personal property lost in a disaster. The relevant passage states:

"Most insurance policies pay the actual cash value—an amount equal to what the items were actually worth at the time they were damaged or destroyed. For example, it might cost $1,000 to replace your sofa at today's prices. If the average useful life of a sofa is 20 years, and your sofa was 10 years old on the

- 22 -

day it was destroyed, the company would pay you $500." Ill. Dep't of Ins., *When Disaster Strikes—What to Do After an Insured Homeowners Loss*, at 5, https://www2.illinois.gov/sites/Insurance/Consumers/Documents/disaster.pdf (last visited Sept. 1, 2021) [https://perma.cc/DYK5-3VEC].

State Farm contends that this passage shows that DOI believes that the ACV regulation contemplates that depreciation will be applied to the entire estimated replacement cost of property. This passage, however, refers to personal property replacement, which is not at issue in this case. Moreover, it does not purport to address the issue of labor depreciation. Finally, the PDF specifically provides as follows:

"This information was developed to provide consumers with general information and guidance about insurance coverages and laws. It is not intended to provide a formal, definitive description or interpretation of Department policy. For specific Department policy on any issue, regulated entities (insurance industry) and interested parties should contact the Department." *Id.* at 1.

Thus, the fact sheet is clearly not a statement of DOI policy to which this court would defer.

¶ 49 Because we find that the policy is ambiguous on the question of labor depreciation, we are required to construe it in the insured's favor if the insured's interpretation is reasonable. As we explained earlier, when multiple reasonable interpretations exist, we are not permitted to choose which interpretation we will follow. *Supra* ¶ 19 (citing *Employers Insurance of Wausau*, 186 Ill. 2d at 141). Rather, we must construe the policy in favor of the insured. *Supra* ¶ 19. We hold that the insured has offered a reasonable interpretation of the policy. Undefined terms are construed with reference to the average, ordinary, normal, reasonable person. *Outboard Marine Corp.*, 154 Ill. 2d at 115.[5] Several state and federal

---

[5]Because we construe the policy in light of the understanding of a reasonable insured, we necessarily reject State Farm's argument that its interpretation is compelled by how the term "depreciation" is understood in contexts such as tax and maritime law and appraisals. See *Arnold v. State Farm Fire & Casualty Co.*, 268 F. Supp. 3d 1297, 1312 n.24 (S.D. Ala. 2017) (rejecting same argument by State Farm because a reasonable insured "is not charged with knowledge of these

- 23 -

courts have held that the language "replacement cost less depreciation" would not necessarily indicate to a reasonable insured that labor would be depreciated in determining ACV, and there are several reasons why this is the case.

¶ 50      First, as Justice Boudreau explained in his dissent in *Redcorn*, labor is not logically depreciable, as it does not lose value over time due to wear and tear. Materials deteriorate with time, but labor does not. *Redcorn*, 2002 OK 15, ¶ 8 (Boudreau, J., dissenting, joined by Watt, V.C.J., and Summers, J.). Labor is a fixed cost that is not subject to wear and tear, deterioration, or obsolescence. The Tennessee Supreme Court in *Lammert*, although stating that it was not weighing in on whether labor was logically depreciable (*Lammert*, 572 S.W.3d at 179), noted that:

> "[I]t is reasonable that a homeowner would understand that depreciation would only be applicable to material goods that can age and experience wear and tear. It is also reasonable that a homeowner, knowing that replacement costs include both labor and materials to rebuild a roof, would believe that the insurance company would only apply depreciation to the physical materials, those things that actually deteriorated." *Id.* at 178.

The *Lammert* court explained that the insurance company was relying on "a technical definition of depreciation that is not evident on the face of either policy." *Id.* at 179. And, as the *Arnold* court noted, the belief that labor does not depreciate "is a plausible conception for a wealth of thoughtful, knowledgeable judges, and it is even more so for lay insureds with no special competence in property or insurance matters." *Arnold v. State Farm Fire & Casualty Co.*, 268 F. Supp. 3d 1297, 1312 (S.D. Ala. 2017).

¶ 51      Second, depreciating labor can result in the insured being placed in a worse position than he was in before the loss. As several courts have noted, the labor cost of installing old materials would be the same as the cost to install brand new materials. See *Mitchell*, 954 F.3d at 706 (explaining that depreciating only material components puts insured back in the position she was in before the loss; cost of installing old shingles would be the same as the cost of installing new shingles;

---

usages, and the defendant has failed to explain how they could negate the reasonableness of construing the Policy as not providing for depreciation of labor costs").

calculating ACV in this manner is proper indemnity rather than a windfall); *Hicks*, 751 Fed. App'x at 709 (cost to install garage with old materials would be the same as cost to install garage with new materials; indemnity is frustrated when labor is depreciated); *Adams*, 2013 Ark. 475, at 6 (proper indemnity requires giving the insured the cash value of depreciated shingles and the cost of their installation). Contrary to State Farm's argument that this understanding of ACV is "absurd," several courts have determined that it is simply proper indemnity.

¶ 52    Finally, plaintiff's understanding is more in keeping with actual insurance industry practice. State Farm contends that depreciation must be "taken from the whole" and that "all costs associated with replacement of damaged property" should be depreciated. Other courts have made observations such as:

> "The policy language provides no justification for differentiating between labor and materials when calculating depreciation, and to do so makes little sense. The value of a house is determined by considering it as a fully assembled whole, not as the simple sum of its material components." *Accardi*, 838 S.E.2d at 457.

And in *Butler*, the South Carolina Supreme Court said that it was "impractical, if not impossible" to depreciate for materials only and that the value of the damaged property is "reasonably calculated as a unit." *Butler*, 858 S.E.2d at 411. Still other courts have explained that the insured "did not pay for a hybrid policy of actual cash value for \*\*\* materials and replacement costs for labor." *Redcorn*, 2002 OK 15, ¶ 14; see also *Henn*, 894 N.W.2d at 190.

¶ 53    State Farm, however, uses a program called Xactimate to prepare estimates, and this program allows for depreciation of materials only. A separate box must be checked to depreciate labor. Thus, contrary to *Butler*'s observation, it is not "impractical, if not impossible" to depreciate for materials only. And, whether or not it makes "little sense" to differentiate between materials and labor when calculating depreciation (*Accardi*, 838 S.E.2d at 457), that is exactly what the claims adjusting software does. As plaintiff's *amicus* United Policyholders notes, "Given that that insurance companies' own valuation software allows for the depreciation of labor costs or not, State Farm cannot credibly argue that Plaintiff's policy interpretation is not reasonable." Moreover, when preparing plaintiff's estimate State Farm did *not* take depreciation "from the whole," nor did it depreciate "all costs associated with replacement of damaged property." Of the 26

line-item repairs, State Farm depreciated labor for only 7 of them, and none of the labor-only items were depreciated. State Farm, for instance, applied no depreciation to content manipulation, removing and replacing drywall, removing and replacing batt insulation, sealing and priming the surfaces to be painted, and texturing the drywall. Thus, although courts such as *Redcorn* and *Henn* have said that an insured does not buy a hybrid policy that pays actual cash value for materials and replacement costs for labor, State Farm did in fact pay full replacement costs for most items of labor. In other words, State Farm's actual practice more closely aligns with plaintiff's understanding of the term "actual cash value" than State Farm's.

¶ 54     For all of the above reasons, we conclude that plaintiff has offered a reasonable interpretation of "actual cash value" and "depreciation." State Farm has also offered a perfectly reasonable interpretation of the policy. However, because we find that the policy is ambiguous and the insured has offered a reasonable interpretation of it, we are required to construe the policy against the insurer. We therefore agree with the appellate court's answer to the certified question, although we do not agree with all of the appellate court's reasoning. The appellate court correctly concluded:

> "Where Illinois's insurance regulations provide that the 'actual cash value' of an insured, damaged structure is determined as 'replacement cost of property at time of loss less depreciation, if any,' and the policy does not itself define actual cash value, only the property structure and materials are subject to a reasonable deduction for depreciation, and depreciation may not be applied to the intangible labor component." 2020 IL App (5th) 180577, ¶ 41.

¶ 55     We therefore answer the certified question in the negative, affirm the appellate court's judgment affirming the circuit court's judgment, and remand the cause to the circuit court for further proceedings.

¶ 56     Certified question answered.

¶ 57     Judgments affirmed.

¶ 58     Cause remanded.

¶ 59     JUSTICE THEIS took no part in the consideration or decision of this case.