2024 IL App (1st) 230616-U

No. 1-23-0616

Order filed July 25, 2024

FOURTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| WOLVERINE WORLD WIDE, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | 21 CH 4457 |
| | ) | |
| ZURICH AMERICAN INSURANCE COMPANY, | ) | |
| LEXINGTON INSURANCE COMPANY, STARR SURPLUS | ) | |
| LINES INSURANCE COMPANY and WESTPORT | ) | |
| INSURANCE CORPORATION, | ) | Honorable, |
| | ) | Pamela Meyerson, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Justices Hoffman and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*:   In this insurance coverage dispute arising out of the COVID-19 pandemic, we affirm the circuit court's dismissal of the insured's complaint with prejudice based on the court's finding that the insured failed to sufficiently plead it was entitled to coverage under the relevant provisions of its insurance policy. Moreover, even if the insured could plausibly allege coverage, the contamination exclusion barred coverage. As these deficiencies could not be cured by amendment, we find the circuit court did not abuse its discretion in denying the insured leave to amend and denying its motion for reconsideration.

¶ 2    The insured, Wolverine World Wide, Inc. (Wolverine), appeals from an order of the circuit

court dismissing its complaint with prejudice pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2020)). Wolverine also appeals from orders of the court denying leave to file amended pleadings and denying its motion for reconsideration. For the reasons that follow, we affirm.[1]

¶ 3                                    I. BACKGROUND

¶ 4      Wolverine is a Michigan-based corporation incorporated under the laws of the State of Delaware and engaged in the business of designing, manufacturing, and marketing a line of footwear. The company also operates retail outlets throughout the United States, including Illinois.

¶ 5      Like many businesses across the country, Wolverine's business operations were disrupted by the COVID-19 pandemic in early 2020. In response to the pandemic, Illinois Governor J.B. Pritzker issued executive orders in March 2020 temporarily closing nonessential businesses and requesting Illinois residents to stay at home, with exceptions for essential activities. As a consequence, Wolverine shut down its retail stores in Illinois. Wolverine alleged that it sustained business losses resulting from the closure orders.

¶ 6      At the time of the closure orders, Wolverine's commercial properties were insured under a $200 million "Zurich Edge" all-risk commercial property policy (Policy) issued by defendant, Zurich American Insurance Company (Zurich).[2] The Policy insured "against direct physical loss of or damage caused by a Covered Cause of Loss to Covered Property." The term "Covered Cause of Loss" was defined as "[a]ll risks of direct physical loss of or damage from any cause unless

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon entry of a separate written order.

[2]Zurich carries a 55% quota share of the $200 million limit provided by the Policy; the other defendant insurers—Lexington Insurance Company, Starr Surplus Lines Insurance Company, and Westport Insurance Corporation (collectively, defendants)—provide varying percentages of the remaining limit.

excluded."

¶ 7    On March 13, 2020, Wolverine filed a property loss claim under the Policy seeking coverage for the business losses and expenses it incurred due to the suspension of its business operations in Illinois. The company alleged that "[a]s a result of the COVID-19 pandemic and the direct physical loss of or damage to [it's] property caused by the Coronavirus and the government guidance and orders, [it] was forced to close all of its stores."

¶ 8    Wolverine alleged that it experienced direct physical loss of or damage to its properties in at least three ways: (1) through federal, state, and local closure orders that drastically limited the function and use of its properties, directly resulting in the loss of business income; (2) through the need to modify physical behaviors through means such as social distancing and avoiding confined indoor spaces; and (3) through the need to mitigate the threat of the virus by instituting preventative and remedial measures.

¶ 9    Wolverine sought coverage under several provisions of the Policy, including the "Tenants Prohibited Access" provision (TPA provision), the only provision at issue on appeal.[3] Defendants denied coverage, reasoning that the coronavirus did not cause "a direct physical loss of or damage" to property. Defendants also determined that the Policy's contamination exclusion barred coverage. After coverage was denied, Wolverine filed a complaint in the circuit court of Cook County, alleging breach of contract and seeking declaratory relief.

¶ 10    Following oral argument, the circuit court entered a written order granting with prejudice the defendants' joint motion to dismiss Wolverine's complaint pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)). The court found that Wolverine failed to state a cause of action upon which relief could be granted, as its complaint failed to allege direct physical loss of

_____

[3]Wolverine also sought coverage under the property damage, time element, civil authority, and ingress/egress provisions of the Policy.

or damage to property as required by the Policy. In granting the motion to dismiss, the court noted that "because of the nature of the virus and the provisions of the Policy, it does not appear that this deficiency can be cured." In addition, the court denied Wolverine leave to amend its complaint, stating that even if Wolverine was allowed to replead, the contamination exclusion would bar coverage. Thereafter, Wolverine filed a motion to reconsider, which the court also denied. This appeal followed.

¶ 11                                    II. ANALYSIS

¶ 12    Wolverine argues the circuit court erred in granting the defendants' joint motion to dismiss its complaint with prejudice pursuant to section 2-615 of the Code. In the alternative, Wolverine maintains it should have been granted leave to amend its complaint.

¶ 13    A motion to dismiss under section 2-615 challenges the legal sufficiency of a complaint based on defects apparent on its face. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). All well-pleaded facts are taken as true and reasonable inferences are drawn in favor of the plaintiff. *Id.* The critical question in reviewing a section 2-615 motion is whether the allegations in the complaint, when construed in the light most favorable to plaintiff, are sufficient to state a cause of action upon which relief may be granted. *Jane Doe-3 v. McLean County Unit Dist. No. 5 Bd. of Directors*, 2012 IL 112479, ¶ 16. A "cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Marshall*, 222 Ill. 2d at 429.

¶ 14    Illinois is a fact-pleading jurisdiction. *Weiss v. Waterhouse Securities, Inc.,* 208 Ill. 2d 439, 451 (2004). Therefore, a plaintiff must allege facts sufficient to bring a claim within a legally recognized cause of action, not simply conclusions. *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 26. We review a circuit court's order granting a section 2-615 motion to dismiss *de*

4

*novo*. *Id.*

¶ 15    We also review *de novo* the interpretation of a contract, such as an insurance policy. *Hess v. Estate of Klamm*, 2020 IL 124649, ¶ 14. "An insurance policy is a contract, and the general rules governing the interpretation of other contracts also govern the interpretation of insurance policies." *Hobbs v. Hartford Insurance Company of the Midwest*, 214 Ill. 2d 11, 17 (2005). "Our primary objective when construing an insurance policy is to ascertain and give effect to the intention of the parties, as expressed in the policy." *Sproull v. State Farm Fire & Casualty Co.*, 2021 IL 126446, ¶ 19. "To ascertain the intent of the parties and the meaning of the words used in the insurance policy, the court must construe the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purpose of the entire contract." *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). "If the words used in the policy, given their plain and ordinary meanings, are unambiguous, they must be applied as written." *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 363 (2006).

¶ 16    With these principles in mind, we turn to the provision at issue in this case.

¶ 17                                  A. The TPA provision

¶ 18    Wolverine contends that its complaint sufficiently pled facts establishing that, pursuant to the Policy's TPA provision, it was entitled to insurance coverage for the business losses and expenses it incurred as a result of the shutdown. The TPA provision provides coverage for business losses when an insured's business activities at an insured location are necessarily suspended because access to the location is "physically obstructed due to the owner, landlord or a legal representative of the building owner or landlord, prohibiting access to the Insured Location."

¶ 19    Wolverine's complaint alleges that the pandemic and closure orders triggered the TPA

5

provision, "causing the necessary suspension of Wolverine's business at its various retail outlets as a result of the property owner and/or landlord physically obstructing and preventing access to Wolverine's retail stores by issuing Shutdown Orders." The complaint, however, does not allege any specific facts demonstrating that a building owner or landlord "physically obstructed" Wolverine from accessing any of its insured locations in Illinois.

¶ 20     "In opposing a section 2-615 motion, 'a plaintiff may not rely on mere conclusions of law or fact unsupported by specific factual allegations.' " *Macleod v. Commonwealth Edison*, 2024 IL App (2d) 230237, ¶ 36 (quoting *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009)). Contrary to Wolverine's conclusory allegations, we do not believe that a building owner or landlord's compliance with executive orders issued by an Illinois governor in response to the COVID-19 pandemic constituted a "physical obstruction" as contemplated by the TPA provision. In our view, within the context of the Policy as a whole, we believe that the clear intent of the term "physically obstructed," as used in the provision, is to provide coverage only when a building owner or landlord physically prevents or obstructs a tenant from accessing an insured location for some reason other than the failure to pay rent. This comports with the general principle that we do not "interpret terms in a factual vacuum, but instead view them in the context in which they appear and with due regard to the factual setting surrounding the issuance of the insurance policy." *American States Insurance Co. v. Koloms*, 281 Ill. App. 3d 725, 730 (1996).

¶ 21                              B. Contamination Exclusion

¶ 22     Moreover, even if Wolverine could plausibly allege coverage under the TPA provision, the Policy's contamination exclusion would bar coverage. An insurer bears the burden of establishing that a claim falls within an exclusion. *Nationwide Property & Casualty Insurance Co. v. State Fire & Casualty Co.*, 2022 IL App (1st) 210267, ¶ 25; *Old Second National Bank v. Indiana Insurance*

6

*Co.*, 2015 IL App (1st) 140265, ¶ 22. "Importantly, a policy provision that purports to exclude or limit coverage will be read narrowly and will be applied only where its terms are clear, definite, and specific." *Gillen v. State Farm Mutual Automotive Insurance Co.*, 215 Ill. 2d 381, 393-94 (2005).

¶ 23    In this case, the contamination exclusion is unambiguous, clear, and specific. It provides:

"This Policy excludes the following unless it results from direct physical loss or damage not excluded by this Policy.

Contamination, and any cost due to Contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy, except as provided by the Radioactive Contamination Coverage of this Policy."

¶ 24    The Policy defines "contamination" as:

"Any condition of property due to the actual presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, Fungus, mold or mildew."

¶ 25    Wolverine argues that the contamination exclusion does not preclude its claims under the TPA provision. In support of this argument, Wolverine relies on the doctrine of "concurrent causation." "Concurrent-causation controversies arise where more than one cause contributes to a loss, some of which are covered and some of which are excluded." *Bozek v. Erie Insurance Group*, 2015 IL App (2d) 150155, ¶ 21. Wolverine contends that the exclusionary language negates coverage only if the loss is caused by "the actual presence of any foreign substance." Wolverine asserts that the contamination exclusion does not apply if the loss is caused, at least in part, by non-excluded causes such as the shutdown orders issued by the governor or the imminent threat of loss due to the coronavirus.

¶ 26 Wolverine attempts to draw a distinction between what it deems to be excluded causes and non-excluded causes. "[I]t defies credulity to see the closure orders and the virus as two different causes of the claimed losses *** the Illinois closure orders were indisputably caused by the coronavirus." *Bradley Hotel Corp. v. Aspen Specialty Insurance Co.*, 19 F. 4th 1002, 1007 (7th Cir. 2021). "The novel coronavirus causing the COVID-19 pandemic led directly to the issuance of the government orders." *Marshall, Inc. v. West Bend Insurance Co.*, 20 F. 4th 311, 321 (7th Cir. 2021). The concurrent-causation doctrine does not apply in this case.

¶ 27 The Policy's contamination exclusion clearly excludes coverage for claims based upon the presence of a virus such as the coronavirus. Wolverine's request for coverage under the TPA provision falls squarely within the contamination exclusion and therefore the exclusion bars coverage. The circuit court correctly ruled there was no coverage under the Policy.

¶ 28 In sum, we find that Wolverine failed to sufficiently plead a cause of action against defendants under the TPA provision, or any other provision in the Policy. Accordingly, the circuit court did not err in granting the defendants' joint motion to dismiss Wolverine's complaint with prejudice pursuant to section 2-615 of the Code.

¶ 29                             C. Leave to Amend Pleadings

¶ 30 Wolverine next contends that the circuit court erred in denying its motion to amend its complaint. Wolverine sought to add additional facts concerning the actions of the landlords in restricting access to the insured properties, and to add a bad faith claim against defendants for denying coverage. The record shows that the circuit court deferred ruling on the motion to amend until after it ruled on the defendants' joint motion to dismiss. After granting the motion to dismiss, the circuit court denied Wolverine leave to amend its complaint. The court determined that the contamination exclusion rendered any proposed amendment futile.

8

¶ 31    A circuit court's "denial of a motion to amend a complaint is a matter of discretion and a reviewing court will not reverse that determination absent an abuse of discretion." *Firebirds International, LLC v. Zurich American Insurance Co.*, 2022 IL App (1st) 210558, ¶ 41. A circuit court abuses its discretion when its ruling is arbitrary or fanciful or where no reasonable person would take the view adopted by the circuit court. *Taylor v. County of Cook*, 2011 IL App (1st) 093085, ¶ 23.

¶ 32    In determining whether the circuit court abused its discretion, we consider the following factors: (1) whether the proposed amendment will cure the defective pleading; (2) whether the proposed amendment would surprise or prejudice the opposing party; (3) whether the proposed amendment was timely filed; and (4) whether the movant had previous opportunities to amend. *Firebirds International*, 2022 IL App (1st) 210558, ¶ 42. "If the amendment would not have cured a defect in the pleading, the other factors are superfluous." *Keefe-Shea Joint Venture v. City of Evanston*, 364 Ill. App. 3d 48, 62 (2005).

¶ 33    In this case, Wolverine's proposed amendments would not have cured its defective pleadings. Therefore, we find the circuit court did not abuse its discretion in denying Wolverine leave to amend. See *Sheffler v. Commonwealth Edison Co.*, 2011 IL 110166, ¶ 78 (finding that denial of leave to amend pleading is not an abuse of discretion where the proposed amendment would not have cured the defective pleading).

¶ 34                                    D. Motion to Reconsider

¶ 35    For the same reasons, we find the circuit court did not abuse its discretion in denying Wolverine's motion for reconsideration. We review the circuit court's ruling on a motion for reconsideration for abuse of discretion. *In re Marriage of Wolff*, 355 Ill. App. 3d 403, 409 (2005). "The purpose of a motion for reconsideration is to apprise the trial court of newly discovered

9

evidence, a change in the law, or errors in the court's earlier application of the law." *Farley Metals, Inc. v. Barber Coleman Co.*, 269 Ill. App. 3d 104, 116 (1994). Here, Wolverine's motion for reconsideration merely reiterates the arguments it made in support of its motion for leave to amend. We find no abuse of discretion in the circuit court's decision to deny the motion for reconsideration.

¶ 36                                    III. CONCLUSION

¶ 37    For the foregoing reasons, we affirm the circuit court's decision granting the defendants' joint motion to dismiss Wolverine's complaint with prejudice pursuant to section 2-615 of the Code. We also find that the circuit court did not abuse its discretion in denying Wolverine leave to amend its pleadings and in denying its motion to reconsider.

¶ 38    Affirmed.