2024 IL App (1st) 232074-U

SECOND DIVISION
September 17, 2024

No. 1-23-2074

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| DESIGNER BRANDS, INC., | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff-Appellant, | ) | of Cook County |
| | ) | |
| v. | ) | 21CH844 |
| | ) | |
| ZURICH AMERICAN INSURANCE COMPANY, | ) | Honorable |
| | ) | Joel Chupack, |
| Defendant-Appellee. | ) | Judge Presiding |

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Van Tine and Justice Ellis concurred in the judgment.

**O R D E R**

¶ 1    *Held*: Dismissal of retailer's insurance coverage dispute affirmed where exclusions to "Tenants Prohibited Access" coverage in commercial property policy excluded business income lost when stores were temporarily closed by government orders intended to curb spread of virus.

¶ 2    Designer Brands Inc. (DBI), which owns the well-known retail footwear chain DSW Designer Shoe Warehouse (DSW), appeals the dismissal of its breach of contract and declaratory judgment claims against its commercial property insurer, Zurich American Insurance Company (Zurich), for failure to state a claim for coverage of business income that DBI lost during the 2020 outbreak of COVID-19.

¶ 3    DBI designs, produces and retails footwear and accessories. Its DSW retail chain operates 500 locations across the United States. The stores suffered significant financial losses in early 2020 when COVID-19 emerged and rapidly spread nationwide. Federal, state, and municipal government orders temporarily closed all nonessential businesses and when the DSW stores reopened they were subject to occupancy restrictions and had to incur the costs of other protective measures. DBI sought to recover under its Zurich EDGE Global policy. It contended that the SARS-CoV-2 virus (which causes the COVID-19 illness) and government orders caused direct physical loss of or damage to insured property. Zurich, however, denied any covered property loss or damage and invoked an exclusion about the "enforcement of any law, ordinance, regulation or rule regulating or restricting the *** occupancy, operation or other use *** of any property" and an exclusion about "Contamination."

¶ 4    DBI filed a breach of contract and declaratory judgment action in February 2021, but withdrew and amended its pleading in October 2021, after Zurich filed an answer, affirmative defenses, and counterclaim for declaratory judgment. It appears that DBI amended its complaint in order to better allege that the pandemic caused direct physical loss of or damage to property, and to refute the relevance of the "Law or Ordinance" and Contamination exclusions. In both its original and amended complaints, DBI claimed that the virus and government orders triggered the policy's Time Element Coverages (including Gross Earnings, Extended Period of Liability, Extra Expense, and Leasehold Interest); Civil or Military Authority Coverage; Contingent Time Element Coverage; Ingress/Egress Coverage; Protection and Preservation of Property Coverage; and Tenants Prohibited Access Coverage.

¶ 5    In June 2022, Zurich filed a motion for judgment on the pleadings in which argued that,

due to numerous other claims after the pandemic's outbreak, it was clear that COVID-19 and related government restrictions do not trigger commercial property coverage because there is no direct physical loss or damage caused by a covered cause of loss.[1] See *e.g.*, *ABW Development, LLC v. Continental Casualty Co.*, 2022 IL App (1st) 210930, ¶ 35 ("direct physical loss or damage to" property requires actual physical loss or damage and does not extend to mere loss of use of a premises); *Lee v. State Farm Fire and Casualty Co.*, 2022 IL App (1st) 210105, ¶ 20 ("direct physical loss" requires physical alteration of property and does not encompass economic loss); *GPIF Crescent Court Hotel LLC v. Zurich American Insurance Co.*, 2022 IL App (1st) 211335-U, ¶ 22; *Ark Restaurants Corp. v. Zurich American Insurance Co.*, 2022 IL App (1st) 211147-U, ¶ 26; *Sweet Berry Café, Inc. v. Society Insurance, Inc.*, 2022 IL App (2d) 210088, ¶ 43. See also *Stats LLC v. Continental Insurance Co.*, 2023 IL App (1st) 220936-U, ¶ 43 (in which the court stated in late 2023, "our research has revealed dozens of federal and state court cases from nearly every jurisdiction finding that the presence of COVID-19 particles does not constitute physical loss or damage as those terms are used in commercial insurance contracts").

¶ 6 Zurich further argued that only one of the many coverages DBI identified in its pleading, Tenants Prohibited Access (TPA) coverage, did not require DBI to show direct physical loss of or damage to property; however, DBI failed to allege facts sufficient to fall within the scope of that coverage. That is, DBI needed to allege facts that, if true, would establish that an owner, landlord, or their representative had "physically obstructed" access to the DSW stores.

¶ 7 Zurich also argued the effect of the two exclusions.

---

[1] Some policies and precedent use the phrase "direct physical loss or damage" while others use the phrase "direct physical loss *of* or damage." (Emphasis added.) The Zurich policy at issue includes both phrases. We will use the shorter one when possible.

¶ 8 There are gaps in the record on appeal, but it appears that DBI again chose to withdraw and amend its complaint. In the second amended complaint, which is the pleading at issue on appeal, TPA coverage took center stage. DBI directed Counts I and II of its second amended complaint toward TPA coverage. In Counts III and IV, however, DBI set out direct physical loss or damage claims as alternatives to its TPA claims. DBI now tells us that it "disagrees" with the extensive line of adverse authority we referenced above, but that it is settled law. DBI states that it raises the direct physical loss or damage claims here "for preservation purposes only" and that it "will not argue these issues *** in this TPA Coverage appeal." There is a "well-established principle of appellate review" that the "failure to argue an issue in the opening brief waives that issue on appeal." *Fink v. Banks*, 2013 IL App (1st) 122177, ¶ 15. "An issue that is merely listed or included in a vague allegation of error is not 'argued' and will not satisfy the requirements of [Rule 341(h) regarding the contents of an opening brief]." *Vancura v. Katris*, 238 Ill. 2d 352, 370 (2010); Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (briefing rule stating that points that are not well-developed with reasoned argument, citation to authority, and citation to record are forfeited and cannot be argued for the first time in a reply brief, at oral argument, or in a motion for reconsideration). We find that DBI forfeited its direct physical loss or damage claims by failing to brief them. To whatever extent the claims were "preserved" in the opening brief, based on the cited precedent, we affirm the circuit court's decision to dismiss those claims. As the circuit court stated, "the law in Illinois is clear that [neither] the presence of the COVID[-]19 virus *** nor *** the [resulting] government orders or proclamation cause direct physical loss or damage to property."

¶ 9 In the second amended complaint, DBI alleged in relevant part that "[a]t many" DSW stores, such as the 28 located within the interior of shopping malls, DBI does not control building

access. During the outbreak of COVID-19, it was notified in March 2020 by its landlords, owners, or their agents that some of the stores "were being forcibly closed." DBI refers to these notifications as "Landlord Lockout Orders." Also, DBI intended to give specifics during discovery about the impacted locations, but it provided two examples. One was shopping center owner Simon Property Group Inc. (Simon). On March 18, 2020, Simon issued a notice to tenants and a press release, which stated in part:

> " 'after extensive discussions with federal, state and local officials and in recognition of the need to address the spread of COVID-19, Simon will close all of its retail properties, including Malls, Premium Outlets and Mills in the U.S. This measure will take effect from 7 pm local time today and will end on March 29.' "

Simon subsequently extended the closures of all locations through at least the end of April 2020. On information and belief, many of the notifications were accompanied by the landlords, owners, or their agents "physically locking building entrances." Consequently, DSW stores collectively incurred multi-million-dollar losses. TPA coverage (§ 5.02.28 of the policy) encompasses actual "Gross Earnings" or "Gross Profit" loss sustained from "the necessary 'Suspension' of the Insured's business activities at an Insured Location if access to that 'Location' by the Insured's suppliers, customers or employees is physically obstructed due to the owner, landlord or a legal representative of the building owner or landlord, prohibiting access to the Insured Location." The phrase "physically obstructed" is not defined in the policy. TPA coverage is conditioned upon the prohibition to access exceeding 48 hours and this condition was met. Zurich, however, relying on its interpretation of the insurance contract, wrongfully denied the TPA claim.

¶ 10     In the "direct physical loss or damage" section of its pleading (counts III and IV, not on

appeal), DBI further alleged in relevant part:

> "149. Starting no later than March 2020, state and local governments in various jurisdictions in which [the insured] does significant business issued proclamations and orders that, among other things, closed all but 'essential' businesses; imposed occupancy restrictions; urged and/or required the public to avoid all non-essential travel; barred large group gatherings and events; and, even if stores remained open, required [the insured] to incur costs to provide for social distancing of customers and employees.

> 150. These state, county, and/or municipal proclamations and orders partially or totally prohibited access to [the] Insured Locations.

> 151. Such proclamations and orders were issued as a direct result of the COVID-19 pandemic and public health crisis."

¶ 11    Zurich filed a section 2-615 motion to dismiss in which it argued that DBI could not state a claim for TPA coverage because the insurance claims fell squarely within the policy's Law or Ordinance and Contamination exclusions. 735 ILCS 5/2-619 (West 2000). Zurich contended that the Law or Ordinance exclusion applied because the landlords' notifications were issued in response to government orders intended to slow the spread of COVID-19. As for the Contamination exclusion, it applied to all of the non-Louisiana DSW locations because the presence of SARS-CoV-2 virus, which is what causes the COVID-19 illness, clearly contributed to all of the losses. After briefing and a hearing, the circuit court granted Zurich's motion.

¶ 12    A motion to dismiss pursuant to section 2-615 attacks the legal sufficiency of a complaint based on defects apparent on its face. *Lee*, 2022 IL App (1st) 210105, ¶ 14; 735 ILCS 5/2-615 (West 2020). In an appeal from a section 2-615 dismissal, the question posed is whether, taking

all the well-pled facts as true, and construing the allegations in the complaint in a light most favorable to the plaintiff, the plaintiff stated a cause of action upon which relief may be granted. *Jane Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 16. The standard of review is *de novo. Traveler's Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 292 (2001) (the construction of the provisions of an insurance policy is a question of law, subject to *de novo* review).

¶ 13    When an insured sues its insurer over a denial of coverage, "the existence of coverage is an essential element of the insured's case, and the insured has the burden of proving that his loss falls within the terms of his policy." *St. Michael's Orthodox Catholic Church v. Preferred Risk Mutual Insurance Co.*, 146 Ill. App. 3d 107, 109 (1986). Once the insured party makes that showing, the burden shifts to the insurer to establish that an exclusion applies. *Id*. An insurance policy is a contract and the general rules that govern the interpretation of contracts also govern the interpretation of insurance policies. *Sproull v. State Farm Fire & Casualty Co.*, 2021 IL 126446, ¶ 19. The courts' primary objective is to ascertain and give effect to the intention of the parties, as expressed in the policy's language. *Id*. "The construction should be a natural and reasonable one." *Id*. Accordingly, unambiguous, undefined terms are given their "plain, ordinary, and popular meaning; *i.e.*, they will be construed with reference to the average, ordinary, normal, reasonable person." *Id.*; *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108 (1992) (if the words in a policy are clear and unambiguous, courts read them with their plain, ordinary and popular meaning). "A policy term is not ambiguous because the term is not defined within the policy or because the parties can suggest creative possibilities for its meaning." *State Farm Mutual Automobile Insurance Co. v. Elmore*, 2020 IL 125441, ¶ 21. "[P]rovisions should be applied as

written, and the parties should be bound to the agreement [that] they made." *Elmore*, 2020 IL 125441, ¶ 21.

¶ 14 Zurich does not dispute that DBI factually alleged the conditions that trigger TPA coverage. The appeal concerns the effect of the exclusions.

¶ 15 DBI contends that the two exclusions are cause-related exclusions that apply to other aspects of the policy, but not to TPA coverage because TPA is a "Special Coverage" that does not state it requires a "Covered Cause of Loss" to trigger coverage. DBI contends the question posed by its coverage claim is not what caused its landlords to physically obstruct access to the stores, but only whether the landlords did physically obstruct access. It also contends that there were three "concurrently" occurring risks: physical obstruction, government restrictions, and the presence of a virus. Under Illinois law, an insured risk (physical obstruction) is to be read broadly and in favor of coverage so that it prevails over excluded risks (government restrictions and the presence of a virus) that are to be read narrowly and construed against the insurer. DBI concludes that if the policy is susceptible to more than one reasonable meaning, then there is an ambiguity that must be construed in favor of coverage.

¶ 16 We disagree with DBI's reasoning, as there is no policy language or precedent indicating that the two exclusions never apply to TPA coverage. Instead, the unambiguous contract indicates in two different places that the exclusions do apply to TPA coverage. "[I]nsurance policies often use overlapping provisions to provide greater certainty on the scope of coverages and exclusions" and policy drafters frequently take a "belt-and-suspenders" approach. *Crescent Plaza Hotel Owner, L.P. v. Zurich American Insurance Co.*, 20 F.4th 303, 311 (7th Cir. 2021); *TMW Enterprises, Inc. v. Federal Insurance Co.*, 619 F.3d 574, 577 (6th Cir. 2010) (noting that

"redundancies abound" in insurance contracts).

¶ 17    The first instance is § 3.03 of the policy. Under the heading "EXCLUSIONS," § 3.03 specifies that the "following [Contamination and Law or Ordinance] exclusions [in § 3.03.01.01 and § 3.03.01.03] apply unless specifically stated elsewhere in this Policy." The Law or Ordinance exclusion (§ 3.03.01.03) then excludes coverage for "[l]oss or damage arising from the enforcement of any law, ordinance, regulation or rule regulating or restricting the *** occupancy, operation or other use, or removal including debris removal of any property." The policy's Contamination exclusion (§ 3.03.01.01) excludes " 'Contamination,' and any cost due to 'Contamination' including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy." "Contamination" is defined (§ 7.09) as "[a]ny condition of property due to the actual presence of any *** virus, disease causing or illness causing agent." DBI does not refute § 3.03 with language from "elsewhere in this Policy." DBI contends that TPA coverage is exclusion-proof, because there is what it characterizes as a "savings clause" for insureds in § 3.03.01. This section states "[t]his Policy excludes the following unless it results from direct physical loss or damage not excluded by this Policy." As the section numbers disclose, § 3.03.01 appears in between § 3.03 and §§ 3.03.01.01 and 3.03.01.03. Despite their physical proximity in the contract, § 3.03.01 plainly does not apply here, because, as we stated above, DBI did not allege loss from "direct physical loss or damage" under Illinois law. By its own terms, the provision would apply only if DBI first demonstrated a covered loss resulting from "direct physical loss or damage" and not an excluded loss. Furthermore, what DBI does not explain is how the provision in any way negates the application of the Law or Ordinance exclusion and Contamination exclusion to TPA coverage. The provision does not "link" the two exclusions to

"direct physical loss or damage" as DBI contends, it simply creates a potential exception that is inapplicable here. The language does not "specifically state[]" that the exclusions do not apply to the TPA Coverage. Thus, § 3.03 governs the extent of Zurich's obligation to DBI.

¶ 18    The second instance that the two exclusions are invoked is § 5.01.02. This section is more specific to TPA "Special Coverage" and provides that "Special Coverages & Described Causes of Loss are subject to the Policy provisions, including applicable exclusions and deductibles, all as shown in this section and elsewhere in this Policy, whether or not a Limit of Liability is shown." DBI again cites no language which negates § 5.01.02's application to TPA coverage. DBI argues that the key word in § 5.01.02 is "applicable," because the plain meaning of "applicable" is not "all." DBI argues this means that even if Zurich's interpretation is plausible, then the policy is ambiguous in this respect and must be construed in favor of coverage. See *Outboard Marine*, 154 Ill. 2d at 108 (if words are susceptible to more than one reasonable interpretation, they are ambiguous and to be construed against the drafter of the policy). This reading of § 5.01.02 is unpersuasive as the wording is not susceptible to more than one *reasonable* meaning. We find no ambiguity in § 5.01.02's broad statement that TPA coverage is "subject to the Policy provisions, including applicable exclusions[,] *** all as shown in this section and elsewhere in this Policy." Section 5.01.02 indicates that TPA coverage is subject to the exclusions under discussion.

¶ 19    We find that the two exclusions clearly apply to TPA coverage. DBI cannot escape the basic principle of contract law that "provisions should be applied as written, and the parties should be bound to the agreement [that] they made." *Elmore*, 2020 IL 125441, ¶ 21.

¶ 20    The next question is whether the two exclusions bar coverage for the particular claims at issue. While DBI argues that its losses were caused by its landlords' notifications, it is apparent

that the notifications were issued in direct response to government orders issued to slow the spread of COVID-19. DBI's own allegations made that connection. In paragraphs 149, 150 and 151 of the pleading, DBI stated that the "state, county and/or municipal proclamations and orders partially or totally prohibited access to [the] Insured Locations" and that "[s]uch proclamations and orders were issued as a direct result of the COVID-19 pandemic and public health crisis." Furthermore, the representative landlord, Simon, issued a press release attached to the pleading announcing closure of Simon shopping malls after "extensive discussions "*with federal, state and local officials* and in recognition of the need to address the spread of COVID-19."

¶ 21    The Seventh Circuit, applying Illinois law in *Bradley Hotel*, addressed the same government directives and found that a nearly identical law and ordinance exclusion in a commercial property policy barred coverage for alleged business income losses stemming from the pandemic. *Bradley Hotel Corp. v. Aspen Specialty Insurance Co.*, 19 F.4th 1002 (7th Cir. 2021). In that case, the insured did not dispute that the government orders regulated the use of the commercial property. *Id*. at 1008. Instead, the insured attempted to avoid the exclusion by arguing that government orders were neither law nor ordinance. *Id*. The Seventh Circuit rejected that argument, because government orders which mandated the closure of businesses, such as restaurants and malls, had the force of law and could be enforced with coercive sanctions against private businesses and persons. *Id*. at 1009. As the *Bradley Hotel* panel recognized, this is because the Illinois legislature authorized the governor to take such emergency measures to protect public health and to impose consequences for violations. *Id*. When Governor J.B. Pritzker issued the closure orders, he was acting under statutory authority that enabled him to regulate " 'the use, sale or distribution of *** materials, goods or services; and perform and exercise any other functions,

powers, and duties as may be necessary to promote and secure the safety and protection of the civilian population.' " *Id*. (citing 20 ILCS 3305/7 (West 2020)). Thus, these orders were appropriately categorized as laws within the meaning of the policy. *Id*.; *Paradigm Care & Enrichment Center, LLC v. West Bend Mutual Insurance Co.*, 33 F.4th 417, 423 (7th Cir. 2022) (citing *Bradley Hotel* for the proposition that the "executive orders are legal documents" and stating "the orders were general prophylactic measures taken to slow, suppress, and stop the spread of COVID-19" and "their purpose and scope are clear from the orders themselves"). The Seventh Circuit's reasoning is sound and we adopt it as our own with respect to the Zurich policy. A property owner or landlord providing notice to a tenant of compliance with government orders does not change the fact that the binding, coercive force behind the orders is a government entity, not the property owner or landlord.

¶ 22    Also, DBI made certain allegations in its TPA coverage claims and other allegations in the "direct physical loss or damage" claims that were pled "in the alternative" but DBI cannot refute the fact that the landlords' notifications were the result of government orders issued in response to the pandemic. DBI's two sets of claims were not contradictory. The TPA claims introduced the landlords' notifications (counts I and II), while the direct-physical-loss-or-damage claims provided more detail and connected the closure of nonessential stores with the government orders regarding COVID-19 (counts III and IV). In determining whether a claim should be dismissed under section 2-615, Illinois courts consider *all* well-pled allegations of fact. *Bulatovic v. Dobritchanin*, 252 Ill. App. 3d 122, 127-28 (1993) (where plaintiff pled certain allegations in the alternative that were ambiguous versions but not contradictory versions of allegations pled in support of another cause of action, the ambiguity would be resolved against the pleader and the court would "view the more

specific averments of fact *** as what plaintiffs meant"). Thus, we may consider paragraphs 149, 150 and 151, in conjunction with the TPA counts at issue.

¶ 23    Here, the policy's Law or Ordinance exclusion is applicable if the alleged loss arises out of the enforcement of a law or ordinance regulating the use of property. DBI pled that its employees, suppliers and customers could not physically access DSW stores due to the government orders issued in this jurisdiction and/or the COVID-19 pandemic. DBI contends that it was the landlords that prevented tenants from accessing the retail space, but in fact, the landlords informed tenants about the mall closures because the government orders required retail businesses to temporarily close. The Law or Ordinance exclusion's broad "arising from the enforcement" language, therefore, encompasses the alleged losses. Unquestionably, the alleged losses arise out of the enforcement of a law or ordinance regulating the use of property. DBI cannot state a claim for TPA coverage under these circumstances.

¶ 24    With respect to all DSW locations outside of Louisiana, the TPA claims fail for the additional reason that the Contamination exclusion, which applies to "Contamination" and any cost due to "Contamination," including the inability to use or occupy property. The portion of the policy applicable to all non-Louisiana properties defines "Contamination" to include the presence of any virus. A policy endorsement applicable to Louisiana properties removes "virus" from the definition of " 'Contamination.' " DBI's allegations indicate that the losses it suffered were attributable to the presence of a virus. Unambiguous policy language is applied as written and the clear Contamination clause bars the claims at issue, at least with respect all of the DSW stores that were not located in Louisiana.

¶ 25    Furthermore, we are not the only court to reach this conclusion. There was no authority

directly on point before the parties filed their briefs, but recently, another panel of this appellate court found that Zurich's Contamination exclusion applies to TPA coverage. We granted Zurich leave to cite the unpublished decision as supplemental authority. That case has many similarities to the one that we are addressing. Wolverine, the plaintiff corporation in *Wolverine World Wide, Inc. v. Zurich American Insurance Co.*, 2024 IL App (1st) 230616-U, designed, manufactured, marketed and sold footwear in the United States and it insured its retail locations in 2020 through a Zurich EDGE all-risk commercial property policy. *Id.* It filed a property loss claim after its Illinois stores were shut down by the COVID-19 pandemic and the governor's orders temporarily closed nonessential business. *Id.* at ¶ 7. Zurich denied the claim and also prevailed on a motion to dismiss Wolverine's breach of contract and declaratory relief action. *Id.* at ¶ 9. Wolverine appealed only its claim regarding TPA coverage. *Id.* The appellate court affirmed the dismissal, because Wolverine failed to allege any specific facts indicating the landlord or building owner had " 'physically obstructed' " the footwear company from accessing its insured locations in Illinois. *Id.* at ¶¶ 19-20. In what DBI now points out was *dicta*, the court went on to find that even if Wolverine could "plausibly allege" coverage under the TPA provision, then the "unambiguous, clear, and specific" Contamination exclusion "clearly excludes coverage for claims based upon the presence of a virus such as the coronavirus." *Id.* at ¶¶ 22-27.

¶ 26    We cite *Wolverine* for the additional reason that it dispensed with DBI's concluding argument that even if the government orders and presence of the virus caused the loss of business income, they are "concurrent" or "contributing" causes alongside the landlords' notifications, not the sole proximate cause of the loss. *Wolverine*, 2024 IL App (1st) 230616-U, ¶¶ 26-27. DBI is invoking the following principle of insurance law:

"[T]here may be more than one proximate cause of an injury. A proximate cause of an injury is any cause which, in natural or probable sequence, produced the injury complained of. It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury. See Illinois Pattern Jury Instruction (IPI) Civil, No. 15.01 (2d ed. 1971). If a proximate cause of an injury is within the included coverage of an insurance policy, the included coverage is not voided merely because an additional proximate cause of the injury is a cause which is excluded under the policy. Thus, in order for an injury to be excluded from coverage under an insurance policy, the injury must have been caused solely by a proximate cause which is excluded under the policy. The insurance carrier has the burden of proof as to whether the injury was caused solely by a proximate cause which is excluded under the policy." *United States Fidelity & Guarantee Co. v. State Farm Mutual Automobile Insurance Co.*, 152 Ill. App. 3d 46, 48-49 (1987)

¶ 27     DBI's attempt to characterize the landlords' notifications as concurrent, independent causes of the financial losses is not persuasive in the least, and Zurich goes as far as labelling DBI's argument "nonsensical." The Seventh Circuit rejected the argument that the COVID-19 virus and resulting government orders are concurrent, separate causes in *Mashallah, Inc. v. West Bend Mutual Insurance Co.*, 20 F. 4th 311, 320-21 (7th Cir. 2021) (applying Illinois law). The *Mashallah* court explained that "Illinois favors the efficient-or-dominant-proximate-cause rule in the absence of contrary language in the policy." *Id.* (citing, *inter alia*, 7 Couch on Insurance § 101:43 (3d ed. 2021) ("Most courts define the concept [of proximate cause] relative to the 'dominant' or 'moving' cause, even if that cause was accompanied by, or followed by, other causes

of a relatively minor nature"). The court further explained that "[a] risk is an efficient or dominant cause if it sets in motion, in an unbroken causal sequence, the events that cause the ultimate loss." *Id*. at 320-22 (internal citations omitted). Given this standard, the court reasoned:

> "Here, the novel coronavirus causing the COVID-19 pandemic led directly to the issuance of the government orders, which the complaint alleges as the cause of the losses and expenses[.] In other words, the virus set in motion an unbroken causal chain via the government orders to the purported losses and expenses.
>
> The complaint's attempt to decouple the government COVID-19 orders from the COVID-19 virus itself are untenable. *** [T]here can be no honest dispute that the coronavirus was *the* reason these orders were promulgated. It was, so to speak, the prime mover. The causal relationship between the novel coronavirus, the COVID-19 pandemic, the government orders, and the alleged losses and expenses is not debatable.
>
> Given this reality, taking the businesses' artful pleadings at face value would allow them to circumvent the terms and intent of the policy and its exclusions, thereby rendering them essentially meaningless." *Id.* (italics original) (internal citations and quotation marks omitted).

¶ 28    The First District Appellate Court has since applied the reasoning in *Mashallah* to reject policyholder arguments that the COVID-19 virus and the government orders are independent causes of business losses. See *Lee*, 2022 IL App (1st) 210105 at ¶¶ 21-22 (citing *Mashallah* for its rejection of similar causation arguments raised by the insured and holding that the Illinois closure orders were indisputably caused by the coronavirus); *Ark Restaurants*, 2022 IL App (1st) 211147-U, ¶ 31 (relying upon *Mashallah* in rejecting similar causation argument under Zurich's

Contamination exclusion since "courts have consistently recognized that the COVID-19 virus is what precipitated the government orders and the type of business losses at issue").

¶ 29    Illinois courts are not the only courts that have rejected the contention that the executive closure orders and the COVID-19 virus were concurrent causes of loss. Examples include *Franklin EWC, Inc. v. Hartford Financial Services Group, Inc.*, 488 F. Supp. 3d 904, 908 (N.D. Cal. 2020) ("[U]nder Plaintiffs' theory, the loss is created by the Closure Orders rather than the virus, and therefore the Virus Exclusion does not apply. Nonsense."); *Ballas Nails & Spa, LLC v. Travelers Casualty Insurance Co. of America*, 511 F. Supp. 3d 978, 986 (E.D. Mo. 2021) ("While it was the orders that technically forced Ballas to suspend its business to protect public health, the orders came about only because of the Covid-19 virus spreading rapidly throughout the community. The primary cause of Ballas's business temporarily closing was the presence of the virus in St. Louis County and the State of Missouri."); *Mac Property Group LLC & The Cake Boutique LLC v. Selective Fire & Casualty Insurance Co.*, 278 A.3d 272, 295 (N.J. Super. Ct. App. Div.), *cert. denied sub nom. MAC Property Group LLC v. Selective Fire & Casualty Insurance Co.*, 284 A.3d 440 (N.J. 2022), and *cert. denied sub nom. MAC Property Group LLC v. Selective Fire & Casualty Insurance Co.*, 284 A.3d 443 (N.J. 2022) ("the [New Jersey executive orders] were only issued to curb the COVID-19 pandemic, making the virus the efficient proximate cause of plaintiffs' losses. Therefore, *** we conclude the [executive orders] were inextricably intertwined with COVID-19.").

¶ 30    Cases involving multiple causes of loss that all contribute to a loss are distinguishable. The *Bradley Hotel* court distinguished *Mattis v. State Farm Casualty Ins. Co*., 118 Ill. App. 3d 612 (1983), a case relied upon by DBI, by noting that *Mattis* involved multiple contributing causes of

loss since it concerned damage to a home resulting from poor design, a covered cause of loss, and other natural causes, which were not covered. *Bradley Hotel*, 19 F.4th at 1007-08 (rejecting policyholder's concurrent causation argument in part because "it defies credulity to see the closure orders and the virus as two different causes of the same loss").

¶ 31    DBI cannot circumvent the Law or Ordinance exclusion by claiming that government COVID-19 orders (clearly within the exclusion) caused the landlords' notifications and that DSW's losses resulted from two different causes. Nor can DBI circumvent the Contamination exclusion by attempting to add one more link to the casual chain–the COVID-19 virus caused government orders that resulted in the landlords' notifications. Both the Contamination exclusion and the Law or Ordinance exclusion bar coverage for DBI's claim.

¶ 32    Based on the above reasoning, we affirm the circuit court's decision to dismiss DBI's pleading with prejudice.

¶ 33    Affirmed.