NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 231370-U

NO. 4-23-1370

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 18, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| MADISON MUTUAL INSURANCE COMPANY, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Tazewell County |
| JEAN O'BRIEN, Independent Administrator of the | ) | No. 20MR231 |
| Estate of Carol Weidman, Deceased; CASSANDRA | ) | |
| WEIDMAN, a Minor by Her Motion and Next Friend; | ) | |
| KIMBERLY WEIDMAN; SUSAN KING; MISTY | ) | Honorable |
| YOUNG; and CAMERON WEIDMAN, | ) | Paul E. Bauer, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Harris and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court reversed the trial court's grant of summary judgment to the
defendants where a genuine issue of material fact existed as to whether the insured
made a material misrepresentation in her application for insurance. The appellate
court affirmed the trial court's dismissal of counts III and IV of the insurer's second
amended complaint with prejudice.

¶ 2    After a pit bull owned by Carol Weidman (now deceased) attacked Susan King,

Madison Mutual Insurance Company (Madison Mutual) rescinded a homeowners insurance policy

it had previously issued to Carol. Madison Mutual then sought a declaration that rescission of the

policy was proper, asserting that it was void because Carol falsely claimed in her application for

insurance that she owned no dogs. Madison Mutual and defendants—Jean O'Brien (as the

administrator of Carol's estate (Estate)), Cassandra Weidman, Kimberly Weidman, Susan King,

and Misty Young—filed cross-motions for summary judgment. The trial court denied Madison

Mutual's motion and granted summary judgment in favor of defendants on the basis that no evidence established that Carol made a misrepresentation about her ownership of a pit bull. After Madison Mutual filed an amended complaint raising several policy defenses, the court granted defendants' motions to dismiss two of those defenses. Madison Mutual now appeals, arguing that summary judgment should not have been granted in favor of defendants or, alternatively, the court erred in dismissing two of the policy defense claims. We affirm in part, reverse in part, and remand.

¶ 3                                    I. BACKGROUND

¶ 4          The following facts are taken from the record, including depositions and documents attached to the cross-motions for summary judgment. We will supplement the facts as necessary in our analysis.

¶ 5          Prior to July 2019, Carol lived in her home with her grandson, Cameron Weidman, and his pit bull, "Cash." In July 2019, Cameron left for military boot camp and left Cash with Carol, who fed and cared for the dog in her home.

¶ 6          In November 2019, Carol and her daughter, Kimberly, spoke over the phone with Patty Ledbetter, an employee of Ledbetter Insurance Agency, Inc. (Ledbetter Insurance Agency), and requested a quote for a homeowners insurance policy.

¶ 7          At Patty's deposition, she explained that to prepare a quote, Ledbetter Insurance Agency used worksheets containing questions tailored to the requested policy type. As part of her job duties, she would "read through verbatim the questions on the worksheet [to the customer] and fill out the answers accordingly." Based upon the given answers, she would prepare a quote, which would be reviewed by Brian Ledbetter, the owner of Ledbetter Insurance Agency. Once approved by Brian, she would provide the quote to the customer. If the customer was satisfied with it, Patty

would prepare an application using the information the customer provided, have the customer sign the completed application, and submit it to an insurance company.

¶ 8        One of the insurance companies that Ledbetter Insurance Agency worked with was Madison Mutual. Pursuant to an "Agency Contract," Madison Mutual granted Ledbetter Insurance Agency, as "the Agent," "full power and authority to receive and accept applications for insurance covering such classes of risks as [Madison Mutual] may from time to time authorize to be insured, and at the discretion of [Madison Mutual] to deliver policies and collect funds for [Madison Mutual]." The Agency Contract further provided that "[t]he Agent may solicit such applications by such manner, time, and place as is generally considered proper, and all expenses in connection with solicitations shall be the Agent's."

¶ 9        According to Patty, to obtain a homeowners policy quote for Carol, she asked Carol questions from the appropriate worksheet and filled out the answers herself. One of the lines on the questionnaire read:

"ANY DOGS IN HOME    Y / N    KIND_____."

On the completed worksheet, "N" was circled, and the line after "KIND" was blank. Patty could "not remember the conversation" and could not "specifically remember" asking Carol whether there were any dogs in her home, as she "do[es] 100 of these" questionnaires. However, she stated there had never been a time when she did not ask the questions on the worksheet, as "the procedure is to read through the questions." She affirmed that she went through each question in every section of the questionnaire. Thus, Patty testified that the conversation would have entailed her asking whether there were any dogs in the home, as that question was on the worksheet. Patty testified that, because she circled "N" for the question of whether there were any dogs in the home, she did not discuss with Carol whether she had any specific breed of dog. She explained that if a person

told her there was a dog in the home, she would have proceeded to the "next question, what kind of dog is it," to "make sure it wasn't on the no coverage list." Patty did not show Carol the completed worksheet.

¶ 10    After providing a quote to Carol, Patty prepared an application for a Madison Mutual homeowners insurance policy using the information in the worksheet. The application was five pages long. The heading on the third page read, "*Underwriting Information*." The first question under that heading read, "Do you have a Chow, Pit Bull, Doberman, Rottweiler, Mastiff, Wolf Hybrid, Presa Canarios, Akita, or Staffordshire Terrier dog?" The answer next to that question was "No." Madison Mutual included this question because at that time, it would not allow coverage if any of those breeds were in the applicant's home.

¶ 11    On November 15, 2019, Patty presented the prepared application to Carol for her signature. According to Patty, she gave Carol all the pages of the application except for the "*Underwriting Information*" page containing the question about dog breeds. Above the signature lines on the last page were the following paragraphs:

> "I have read this application all [*sic*] information contained herein is correct. If this application contains a material misrepresentation, I fully understand that the Company may rescind this policy as of the effective date of the application and declare this policy void from its inception and/or cancel any and all coverage. It is further understood that this application is a part of the policy when issued and that [it] is intended that the Company shall rely on the contents of this application in issuing any policy of insurance or renewal.
>
> ***

I understand that none of the coverages noted on this application is [*sic*] in effect unless (1) the application Is [*sic*] signed by an agent of [Madison Mutual] and (2) the policy applied for is issued by [Madison Mutual]."

Carol signed the application in Patty's presence. Brian's signature appeared next to the line that read, "Producer's Signature" and under a paragraph that read, *inter alia*, "The applicant has been asked to provide all of the information requested on this application and all of the information provided the applicant has been set forth herein."

¶ 12       Madison Mutual issued a homeowners insurance policy to Carol, which was effective November 14, 2019, to November 14, 2020. The policy included the following relevant provisions. Under the "Concealment Or Fraud" section, the policy stated:

"We provide coverage to no 'insureds' under this policy if, whether before or after a loss, an 'insured' has:

1.  Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements; [*sic*]

relating to this insurance."

Under the "Duties After 'Occurrence' " section, the policy provided, *inter alia*:

"In case of an 'occurrence[,'] you or another 'insured' will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

- 5 -

1. Give written notice to us or our agent as soon as is practical, which sets forth:

a. The identity of the policy and the 'named insured' shown in the Declarations;

b. Reasonably available information on the time, place and circumstances of the 'occurrence'; and

c. Names and addresses of any claimants and witnesses[.]"

The policy defined "occurrence" as "an accident *** which results, during the policy period, in *** bodily injury."

¶ 13    On March 30, 2020, Cash attacked Carol's granddaughter, Cassandra, resulting in injuries to her. Carol did not report the attack to Madison Mutual.

¶ 14    Another attack occurred on September 18, 2020, when Cash bit Carol's neighbor, Susan, and Cameron's mother, Misty. On that date, Cash was tethered in Carol's yard, but the cable was long enough to allow him to reach Susan while she was emptying her trash. While Susan and Misty were outside, Cash approached Susan and bit her right calf, resulting in a "very bad wound." Cash then bit Misty, resulting in lacerations to her right calf and inner thigh.

¶ 15    On October 8, 2020, Madison Mutual sent Carol a letter pertaining to "a bodily injury sustained by Cassandra Weidman *** on March 30, 2019." In the letter, Madison Mutual explained that it learned from an attorney representing Cassandra that Cassandra had been bitten by Cash at Carol's residence on March 30. Madison Mutual confirmed the attack through records obtained from Tazewell County Animal Control, which also indicated that Carol was Cash's registered owner. The letter noted the attorney's correspondence "was the first notice or contact

that we received at Madison Mutual from anyone regarding this incident" and that an investigation was underway.

¶ 16        On October 28, 2020, Madison Mutual issued a "Notice of Rescission of Homeowners Policy" to Carol. The notice stated that Carol's homeowners policy was being rescinded "based upon a material misrepresentation made by yourself in the application process." Specifically, Madison Mutual claimed Carol failed to disclose she had a pit bull in her home by answering "no" when asked if she had any dogs. Madison Mutual further noted it would not have issued the policy had it known Carol owned a pit bull. Accordingly, Madison Mutual rescinded the homeowners insurance policy.

¶ 17        On October 29, 2020, Madison Mutual filed a single-count complaint against defendants seeking a declaration that its rescission of Carol's policy was valid. On March 31, 2022, Jean O'Brien, as the administrator of the Estate, was substituted for Carol following her death.

¶ 18        On September 19, 2022, Madison Mutual filed a motion for summary judgment, arguing that it properly rescinded the policy because it was "uncontroverted that Carol Weidman made a false statement or a material misrepresentation when she informed Patty Ledbetter that no dog was residing in the home during the course of the homeowners insurance application process."

¶ 19        On October 14, 2022, Susan filed her response and cross-motion for summary judgment. She argued there was "no competent evidence in the record" that Carol denied having a dog in her home, as the only evidence suggesting as much was Patty's testimony that she asks everyone each question on the Ledbetter Insurance Agency worksheet. Susan further argued that Carol would not have been aware she was signing an application containing inaccurate information because Patty did not show her the page containing the incorrect information. Susan attached to her motion for summary judgment an affidavit from Kimberly. Therein, Kimberly claimed that

during the application process, Patty "never asked us about pets or animals, including dogs, that were living in [Carol]'s home or were owned by [her]." Carol's Estate filed a similar response and cross-motion for summary judgment. Misty adopted the Estate's response and motion. Cassandra adopted the responses filed by Susan and the Estate.

¶ 20 On October 28, 2022, the trial court held a hearing on the cross-motions for summary judgment. Madison Mutual argued that rescission of the policy was proper because Carol's application contained a material misrepresentation that was attributable to her even if Patty never asked about dog ownership, since Carol ultimately signed the application. Defendants responded that there was no "competent evidence" that Carol made a false representation.

¶ 21 On November 1, 2022, the trial court entered its order denying Madison Mutual's motion for summary judgment and granting the cross-motions for summary judgment filed by Susan, Misty, and the Estate. The court determined that there was "insufficient evidence" that Carol "made any false statements of material fact" in her application for insurance, and therefore, Madison Mutual's rescission of her policy was improper.

¶ 22 The trial court denied Madison Mutual's subsequent motion for reconsideration but allowed it to amend its complaint. On February 13, 2023, Madison Mutual filed an amended complaint, adding counts II and III, which alleged a reservation of rights. In count II, Madison Mutual asserted that Cassandra was excluded from coverage for the March 30, 2020, attack, because she was a household resident to whom coverage did not extend under the terms of the policy. In count III, Madison Mutual alleged it had no obligation to cover the September 18, 2020, attack because Carol failed to provide appropriate notice of the March 30, 2020, attack. Specifically, Madison Mutual noted that the policy required Carol to provide written notice of an occurrence " 'as soon as is practical.' " Madison Mutual alleged that Carol breached that provision

- 8 -

by failing to provide notice of the March 2020 attack until after the September 2020 attacks. Madison Mutual further asserted that, had Carol properly provided notice of the March 2020 attack, it would have learned that she owned a prohibited dog and canceled the policy before the September 2020 attacks.

¶ 23    Susan moved to dismiss, alleging that count III failed to state a legally recognized cause of action and amounted to an improper retroactive cancelation of the policy. The trial court dismissed count III with leave for Madison Mutual to replead.

¶ 24    Madison Mutual subsequently filed a second amended complaint, which included the prior count II, reasserted count III, and added count IV. Count IV alleged that Cameron, who was added as a defendant, was excluded from coverage for a lawsuit Susan brought against him related to the September 2020 attack because he was not a resident of Carol's home. In connection with counts III and IV, Madison Mutual again alleged that Carol breached the policy by failing to provide notice of the March 2020 attack until after the September 2020 attacks, which prevented Madison Mutual from discovering that she owned a prohibited dog and canceling the policy prior to the September 2020 attack. Susan moved to dismiss counts III and IV, reasserting that those claims did not allege cognizable policy defenses but sought "retroactive cancellation of the policy." The record reflects that the trial court dismissed counts III and IV with prejudice pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2022)). In its order, the court made findings pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that there was no just reason to delay enforcement or appeal of either the order dismissing counts III and IV or its order granting summary judgment to defendants on count I.

¶ 25    This appeal followed.

¶ 26                              II. ANALYSIS

- 9 -

¶ 27                                    A. Summary Judgment

¶ 28         On appeal, Madison Mutual first argues that the trial court erred in denying its motion for summary judgment and granting summary judgment in favor of defendants. It argues there is no genuine issue that it issued a policy to Carol due to a material misrepresentation in her application for insurance, and therefore, rescission of her policy was proper. Susan and Misty were the only defendants to file appellee briefs. They argue that the court properly granted summary judgment in defendants' favor because there is no evidence that Carol ever denied having a pit bull in her home. We note that, while the remaining defendants filed no briefs, the record in this case is simple, and we are able to decide the issues on appeal without the aid of their briefing. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 29         The grant of summary judgment is a drastic remedy, and thus, it should be granted only when the right of the moving party is clear and free from doubt. *Mashal v. City of Chicago*, 2012 IL 112341, ¶ 49. Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 725 ILCS 5/2-1005(c) (West 2022). A "genuine issue of material fact" exists when there is a dispute as to the material facts or, if the material facts are undisputed, reasonable persons could draw different inferences from those undisputed facts. *Mashal*, 2012 IL 112341, ¶ 49. " 'Genuine' means there is evidence to support the position of the nonmoving party." *Pekin Insurance Co. v. Adams*, 343 Ill. App. 3d 272, 275 (2003). "The purpose of summary judgment is not to try a question of fact, but to determine whether a genuine issue of material fact exists." *Illinois State Bar Ass'n Mutual Insurance Co. v. Law Office of Tuzzolino & Terpinas*, 2015 IL 117096, ¶ 14. Where parties file cross-motions for summary judgment, they agree that the case involves only a question of law and

- 10 -

invite the trial court to decide the issues based on the record. *Country Mutual Insurance Co. v. Oehler's Home Care, Inc.*, 2019 IL App (4th) 190080, ¶ 55. However, when parties file cross-motions for summary judgment, the trial court is not obligated to grant one of the motions. *Country Mutual Insurance Co.*, 2019 IL App (4th) 190080, ¶ 55; see *Kotte v. Normal Board of Fire & Police Commissioners*, 269 Ill. App. 3d 517, 520 (1995) ("The fact that both parties have filed motions for summary judgment does not necessarily mean there is no genuine issue of material fact."). Notably, "if reasonable people could draw different inferences from the undisputed facts, summary judgment is inappropriate." *Country Mutual Insurance Co.*, 2019 IL App (4th) 190080, ¶ 55 (quoting *Travelers Property Casualty Co. of America v. ArcelorMittal USA Inc.*, 2019 IL App (1st) 180129, ¶ 11). When determining whether a genuine issue of material fact exists, a court must view the evidence in the light most favorable to the nonmoving party and strictly against the moving party. *Country Mutual Insurance Co.*, 2019 IL App (4th) 190080, ¶ 55. We review the entry of summary judgment in favor of a party *de novo*. *Illinois State Bar Ass'n Mutual Insurance Co.*, 2015 IL 117096, ¶ 14.

¶ 30    Section 154 of the Illinois Insurance Code (215 ILCS 5/154 (West 2022)) provides, in part:

> "No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance, or breach of a condition of such policy shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, false warranty or condition shall have been stated in the policy or endorsement or rider attached thereto, or in the written application therefor. No such misrepresentation or false warranty shall defeat or avoid the policy unless it

shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company."

This section establishes a two-pronged test for determining whether an insurance policy may be rescinded. *Illinois State Bar Ass'n Mutual Insurance Co.*, 2015 IL 117096, ¶ 17. "First, the statement must be false, and second, it either must have been made with an actual intent to deceive or must 'materially affect the acceptance of the risk or hazard assumed by the insurer.' " *Illinois State Bar Ass'n Mutual Insurance Co.*, 2015 IL 117096, ¶ 17 (quoting *Golden Rule Insurance Co. v. Schwartz*, 203 Ill. 2d 456, 464 (2003)). Because the statute is written in the disjunctive, a policy can be defeated either when there is an actual intent to deceive or if a material misrepresentation affects the acceptance of the risk or the hazard assumed by the insurer. *Illinois State Bar Ass'n Mutual Insurance Co.*, 2015 IL 117096, ¶ 17. Importantly, if the misrepresentation "materially affects the insurer's acceptance of the risk, it does not matter that one of the parties, or an insured, might not have been to blame for the misrepresentation." *Illinois State Bar Ass'n Mutual Insurance Co.*, 2015 IL 117096, ¶ 17. Thus, even an innocent misrepresentation permits rescission. *Illinois State Bar Ass'n Mutual Insurance Co.*, 2015 IL 117096, ¶ 17. Accordingly, an insurer need not prove that a misrepresentation was made with the intent to deceive if the misrepresentation was material to the risk it assumed. *Illinois State Bar Ass'n Mutual Insurance Co.*, 2015 IL 117096, ¶ 17.

¶ 31        Madison Mutual argues that the trial court erred in denying its motion for summary judgment and granting summary judgment in favor of defendants because the record established that Carol's application for insurance indicated that she did not have a pit bull when in fact she did. Madison Mutual contends that this misrepresentation was material, as it issued a homeowners insurance policy to Carol even though, normally, it would not insure any individuals who had pit

- 12 -

bulls in their homes. Defendants respond that no evidence definitively established that Carol made a misrepresentation, and therefore, the grant of summary judgment in their favor was proper. Specifically, defendants contend that the "only evidence" that might support a determination that Carol made a misrepresentation about owning dogs was Ledbetter's testimony that there has never been a time when she had not asked all the questions on the Ledbetter Insurance Agency questionnaire. Defendants emphasize, however, that Patty could not "specifically remember" asking Carol whether she had dogs. By contrast, they argue, Kimberly's affidavit explicitly noted that Patty "never asked us about pets or animals, including dogs, that were living in [Carol]'s home or were owned by [her]." According to defendants, because Kimberly's affidavit was definite and "unrebutted," no reasonable inference could be made that Carol misrepresented her pit bull ownership.

¶ 32          We reject defendants' argument. Contrary to their assertions, the issue of whether Carol misrepresented her pit bull ownership remains in dispute. Initially, we note that the parties essentially argue divergent inferences that can be drawn from the evidence presented in the cross-motions for summary judgment. Importantly, neither Kimberly's affidavit nor Patty's deposition made any explicit assertion as to whether Carol misrepresented owning a pit bull. Kimberly's affidavit stated only that *Patty never asked* whether there were any dogs in Carol's home. Patty, in turn, testified that she could not "specifically remember" asking Carol whether there were any dogs in her home, but that (1) she always asked every question on the questionnaire worksheet, which includes a question about dogs, and (2) that question was answered in the negative on the worksheet. The parties dispute the import of this evidence, with defendants arguing that it can be reasonably inferred that Carol made no misrepresentation about her dog ownership, while Madison Mutual argues that it can be reasonably inferred that Carol misrepresented whether she owned a

dog. However, whether Patty asked if Carol had a dog in her home does not necessarily resolve the issue of whether Carol actually misrepresented having a dog in her home—let alone render it an undisputed fact. See *Beaman v. Freesmeyer*, 2021 IL 125617, ¶ 72 ("Where a reasonable person could draw divergent inferences from the undisputed material facts or where there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact.").

¶ 33        Indeed, the parties do not even agree as to whether Patty *asked* Carol if she owned a dog. Notably, defendants attempt to portray Kimberly's affidavit as more reliable than Patty's deposition testimony. They contend that Kimberly's affidavit was more conclusive in stating Patty did not ask Carol about her dog ownership and thus refuted Patty's testimony that it was her typical practice to ask every question on the questionnaire to each customer. Defendants' argument, however, amounts to no more than an invitation to make credibility findings and weigh competing pieces of evidence. Contrary to defendants' argument, "a court cannot make credibility determinations or weigh evidence in deciding a summary-judgment motion." *Coole v. Central Area Recycling*, 384 Ill. App. 3d 390, 396 (2008). Moreover, defendants' position disregards that, when determining whether a genuine issue of material fact exists, a court must view the evidence in the light most favorable to the nonmoving party and strictly against the moving party. *Country Mutual Insurance Co.*, 2019 IL App (4th) 190080, ¶ 55.

¶ 34        Here, although Kimberly claimed Patty did not ask Carol about any dogs in her home, Patty testified that there has never been a time in which she did not ask every question on the worksheet, including the question about dog ownership. In reviewing defendants' motion for summary judgment, viewing the evidence in the light most favorable to Madison Mutual as the nonmoving party, we conclude that the trial court erred in granting defendants' motion, as a genuine issue of material fact exists as to whether Carol misrepresented her ownership of a pit

bull. See *Gulino v. Economy Fire & Casualty Co.*, 2012 IL App (1st) 102429, ¶ 24 (genuine issue of material fact existed as to whether structural damage at insured's residence occurred suddenly or over time, where insurer's expert assumed that heavy paper and debris likely caused the basement ceiling to bend, but insured's affidavit stated he never saw any bowing of the ceiling in the time leading up to the collapse).

¶ 35 This conclusion does not end our analysis, however. Madison Mutual further argues that, even if there was a genuine issue of fact as to whether Carol personally told Patty she did not have a pit bull, the trial court nevertheless should have granted its motion for summary judgment. It highlights the language of section 154 of the Insurance Code, which provides, in part, that a policy can be defeated if a material misrepresentation is made "by the insured or in his behalf." 215 ILCS 5/154 (West 2022). On appeal, Madison Mutual contends that whether the misrepresentation about Carol's dog ownership was made by Carol or Patty "is irrelevant" because, even if Carol did not explicitly claim she did not have a pit bull, that assertion could be imputed to her because Patty was acting on her behalf as "her broker."

¶ 36 Defendants respond that Madison Mutual is barred from raising this argument on appeal because it "did not raise any 'agency' theory of imputed liability" in its motion for summary judgment or at the hearing on the motion. Instead, defendants argue, Madison Mutual "relied entirely upon the theory that either (1) Carol Weidman lied to the agent when she was asked whether there were any dogs in the home, or (2) Carol Weidman adopted and affirmed the absence of a dog in the house when she signed the application." Madison Mutual contends that it did raise this theory, as it (1) alleged in its complaint that Carol contacted Ledbetter Insurance Agency, "an independent insurance broker," for a homeowners insurance quote; (2) "included the relevant language from Section 154 of the Insurance Code (215 ILCS 5/154 (West 2022)) regarding

misrepresentation made [*sic*] on 'behalf' of the insured" in its motion for summary judgment; (3) cited case law holding that misrepresentations can be made on an insured's behalf; (4) stated at the hearing on its motion for summary judgment that Madison Mutual would not have issued the policy had it "been apprised by this independent insurance agency through the application process involving Carol Weidman that there was a dog"; and (5) argued in its motion to reconsider the trial court's summary judgment order that Ledbetter Insurance Agency was an insurance broker, and therefore, Carol's agent.

¶ 37      Madison Mutual's arguments are unavailing. First, although Madison Mutual referenced Ledbetter Insurance Agency as being an independent broker in its complaint, defendants did not admit that fact in their answers. Nor do we see any such admission in the record. Indeed, the Estate's cross-motion for summary judgment refers to Patty as an "insurance agent," not a broker.

¶ 38      Additionally, while Madison Mutual quoted the language of section 154 and cited *Illinois State Bar Ass'n Mutual Insurance Co.*, these citations were not in support of any theory that rescission of the homeowners policy was warranted due to a misrepresentation made on behalf of Carol. Instead, after quoting the statutory language, Madison Mutual argued only that Carol "affirmatively told Patty *** that there were no dogs within the home" and that Carol "made a false statement or a material misrepresentation" in doing so. Similarly, beyond citing *Illinois State Bar Ass'n Mutual Insurance Co.* for boilerplate summary judgment principles, Madison Mutual referenced that case only for the proposition that a misrepresentation need not be made with the intent to deceive for rescission to be proper. See *Illinois State Bar Ass'n Mutual Insurance Co.*, 2015 IL 117096, ¶ 17. We further note that to the extent *Illinois State Bar Ass'n Mutual Insurance Co.* noted that misrepresentations may be made on behalf of an insured, the circumstances in that

case were distinguishable. There, the supreme court held that rescission of a legal malpractice insurance policy was proper where one insured attorney, unbeknownst to the other insured attorneys, made a material misrepresentation during the policy renewal process. *Illinois State Bar Ass'n Mutual Insurance Co.*, 2015 IL 117096, ¶¶ 5, 7. However, the court reached that determination after concluding (1) the "innocent insured" doctrine did not apply so as to continue coverage for the attorneys who made no misrepresentations and (2) although the policy terms created a separate contract with each insured, the severability clause nevertheless explicitly treated the " 'statements contained in the APPLICATION,' [as] binding on each insured," such that the application could not "be split off from any individual contract." *Illinois State Bar Ass'n Mutual Insurance Co.*, 2015 IL 117096, ¶¶ 32, 35. Here, there are no claims that a misrepresentation was made by another insured individual similarly situated to Carol.

¶ 39        Finally, while Madison Mutual asserts it made references to Ledbetter Insurance Agency as an "independent insurance agency" during the summary judgment hearing, the record establishes it did not directly raise any argument that Ledbetter Insurance Agency was acting on behalf of Carol as an insurance broker and her agent. Instead, when read in context, Madison Mutual was asserting Ledbetter Insurance Agency was an independent entity that merely forwarded to it an application containing either (1) an explicit misrepresentation *from Carol herself* or (2) an adoption *by Carol* of a misrepresentation through her signature. At no point prior to the trial court's summary judgment ruling did Madison Mutual specifically argue that the misrepresentation could be attributed to Carol through Ledbetter Insurance Agency's actions as an agent. Instead, Madison Mutual raised that argument for the first time in its motion for reconsideration, wherein it asserted Ledbetter Insurance Agency was "an independent insurance broker" engaged in the "customary insurance industry practice" of acting "as the agent for the

- 17 -

insured/applicant when submitting application information to the insurer." Madison Mutual further argued that "[g]enerally, an insurance broker is an agent of the insured, not the insurer," and therefore, no "knowledge of the interactions" between Ledbetter Insurance Agency and Carol could be imputed to it. Although Madison Mutual reiterates these arguments on appeal, we conclude that they have been forfeited, as they were not raised in connection with its motion for summary judgment but raised for the first time in its motion to reconsider the summary judgment order. "Arguments raised for the first time in a motion for reconsideration in the circuit court are forfeited on appeal." *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 36; see *Riney v. Weiss & Neuman Shoe Co.*, 217 Ill. App. 3d 435, 442 (1991) (finding appellants' argument barred where it was not submitted to the trial court "until the motion for reconsideration"). This is because the purpose of a motion to reconsider the entry of summary judgment is not to excuse a failure to present an issue that was available prior to the court's ruling but not brought to its attention. *Riney*, 217 Ill. App. 3d at 442.

¶ 40 Even if Madison Mutual had not forfeited the foregoing arguments, we conclude that there would have nevertheless existed genuine issues of material fact that would have precluded summary judgment in its favor, as we see nothing in the record indicating the parties' agreement that Ledbetter Insurance Agency was an insurance broker and, if so, whether it was acting as an agent of Carol or Madison Mutual.

¶ 41 An insurance broker is

> "one who procures insurance and acts as middleman between the insured and the
> insurer, and solicits insurance business from the public under no employment from
> any special company, but, having secured an order, places the insurance with the
> company selected by the insured, or, in the absence of any selection by him, with

the company selected by such broker." *Galiher v. Spates*, 129 Ill. App. 2d 204, 206-07 (1970).

While an insurance broker is generally recognized as an agent of the insured, "a broker can act as the agent of the insurer, or as the agent of both the insurer and the insured." *State Security Insurance Co. v. Burgos*, 145 Ill. 2d 423, 431 (1991). Additionally, "a broker may have apparent authority to act as the insurer's agent," and where a principal creates the appearance of authority, it is "estopped to deny it to the detriment of a third party." *State Security Insurance Co.*, 145 Ill. 2d at 431-32. This is because the principal is responsible for the actions undertaken by the agent under the authority given to it. See *Zannini v. Reliance Insurance Co. of Illinois*, *Inc.*, 147 Ill. 2d 437, 452 (1992) (discussing *Wille v. Farmers Equitable Insurance Co.*, 89 Ill. App. 2d 377 (1967), and noting that, where agreement in that case gave agency authority to solicit insurance policy applications for insurer, agency was agent of insurer, and insurer was "responsible for [agent]'s actions" related to solicitating insurance). "[T]he person's conduct, rather than a title, determines whether he is an agent or a broker in a given transaction." *Zannini*, 147 Ill. 2d at 452-53. Whether an insurance broker is the agent of the insured or insurer is a question of fact but becomes a question of law if the "evidence shows clearly he is the agent of the insured." *Galiher*, 129 Ill. App. 2d at 207.

¶ 42 The determination of whether a third party is an agent of the insurer or the insured is critical, as it informs to what extent the insurer may be responsible—if at all—for the third party's actions. Of import here, if an agent of an insurer prepares an application for insurance for an applicant but includes a false answer without collusion between the agent and applicant, "a provision that the applicant has read the application and verified the answers before signing it will not save the insurer from being estopped from asserting the false answer as a defense." *Pekin*

*Insurance Co.*, 343 Ill. App. 3d at 278 (genuine issue of material fact existed as to whether insurance company was estopped from raising a misrepresentation claim where there was evidence the company's agent answered "no" to question about whether applicant had a dog on an insurance application without consulting the applicant); *contra Ratliff v. Safeway Insurance Co.*, 257 Ill. App. 3d 281, 282-83, 287-88 (1993) (though insured noted her son as a driver of her vehicle in application for insurance, knowledge of that fact could not be imputed to insurer where insurance agency failed to list the son as a driver because evidence did not establish that agency was acting as agent for the insurer). This is because "whether the agent disregards information from the applicant or does not seek information from the applicant, the agent (on behalf of the principal, the insurer) manifests an indifference to the information." *Pekin Insurance Co.*, 343 Ill. App. 3d at 280.

¶ 43    Here, although Madison Mutual claims on appeal that Ledbetter Insurance Agency was a broker acting as Carol's agent, it points to no evidence in the record to establish this—let alone render it an undisputed fact. Indeed, there is evidence in the record that undermines Madison Mutual's position that Ledbetter Insurance Agency was acting as Carol's agent when it prepared her application. Notably, in its Agency Contract, Madison Mutual granted Ledbetter Insurance Agency the authority to "solicit such applications [for insurance] by such manner, time, and place as is generally considered proper." Additionally, Madison Mutual's own form application for insurance indicates that it considered Ledbetter Insurance Agency to be its agent for purposes of soliciting customers. Specifically, a provision in the application provides that an applicant understands "that none of the coverages noted on this application is [*sic*] in effect unless (1) the application is signed by an *agent of [Madison Mutual]* and (2) the policy applied for is issued by [Madison Mutual]." (Emphasis added.) The evidence showed that the only signature beyond

Carol's appearing in the application was Brian Ledbetter's, who was the owner of Ledbetter Insurance Agency.

¶ 44　　　　Thus, contrary to Madison Mutual's argument, there remained a genuine issue of material fact regarding whether Ledbetter Insurance Agency was acting as Carol's or Madison Mutual's agent when it prepared Carol's application for insurance. Accordingly, we reject Madison Mutual's assertion that as a matter of law the misrepresentation of Carol's dog ownership could be attributed to Carol. Accordingly, we determine that the trial court did not err in denying Madison Mutual's motion for summary judgment.

¶ 45　　　　　　　　　　　B. Dismissal of Counts III and IV

¶ 46　　　　Next, Madison Mutual argues that the trial court erred in dismissing counts III and IV of its second amended complaint with prejudice. It contends that it pled valid policy defenses based on Carol's failure to comply with the policy's notice provision relative to the March 2020 attack. In making this argument, Madison Mutual asserts that the policy's notice provision was not "occurrence specific" and that it had no duty to provide coverage when it suffered prejudice due to a "failure to report an occurrence." Madison Mutual contends it suffered prejudice because "Carol's failure to provide notice prevented it from discovering the pit bull and voiding the policy before the September attacks occurred." Susan and Misty respond that counts III and IV failed to state any legally recognized cause of action and amounted to an improper effort to retroactively cancel the policy.

¶ 47　　　　To support its argument, Madison Mutual points to the "Duties After 'Occurrence' " provision of the policy, which imposes a duty upon an insured to give Madison Mutual written notice setting forth, *inter alia*, "[r]easonably available information on the time, place and circumstances of the 'occurrence.' " That  provision further states that Madison Mutual

has "no duty to provide coverage under this policy" when the insured's failure to comply with the described duties causes prejudice.

¶ 48 "A motion to dismiss pursuant to section 2-615 of the Code [of Civil Procedure] challenges the legal sufficiency of a complaint and asserts that the plaintiff has failed to state a cause of action." *Village of Kirkland v. Kirkland Properties Holdings Co.*, 2023 IL 128612, ¶ 44. When ruling on such a motion, "a court must accept as true all well-pleaded facts and all reasonable inferences therefrom, to determine whether the complaint's allegations—construed in the light most favorable to the plaintiff—are sufficient to establish a cause of action upon which relief may be granted." *Walworth Investments-LG, LLC v. Mu Sigma, Inc.*, 2022 IL 127177, ¶ 39. "A court should not dismiss a complaint pursuant to [section 2-615] unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Rehfield v. Diocese of Joliet*, 2021 IL 125656, ¶ 20. The dismissal of a complaint pursuant to section 2-615 is subject to *de novo* review. *Village of Kirkland*, 2023 IL 128612, ¶ 44.

¶ 49 "Additionally, the construction of the provisions of an insurance policy is a question of law for which our review is *de novo*." *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010). "The rules applicable to contract interpretation govern the interpretation of an insurance policy." *Sproull v. State Farm Fire & Casualty Co.*, 2021 IL 126446, ¶ 19. When construing an insurance policy, the primary objective "is to ascertain and give effect to the intention of the parties, as expressed in the policy language." *Sproull*, 2021 IL 126446, ¶ 19. "The construction should be a natural and reasonable one." *Sproull*, 2021 IL 126446, ¶ 19. Further, "[u]ndefined terms will be given their plain, ordinary, and popular meaning; *i.e.*, they will be construed with reference to the average, ordinary, normal, reasonable person." *Sproull*, 2021 IL 126446, ¶ 19.

¶ 50　　　　　"If an ambiguity exists, then the interpretation of a document is a question of fact which cannot be resolved by a section 2-615 motion; rather, the question can only be resolved after a trial on the merits." *Goddard v. Continental Illinois National Bank & Trust Co. of Chicago*, 177 Ill. App. 3d 504, 509 (1988). Ambiguity exists in an insurance policy "only where the policy language is susceptible to more than one reasonable interpretation." *State Farm Mutual Automobile Insurance Co. v. Elmore*, 2020 IL 125441, ¶ 21.

¶ 51　　　　　Madison Mutual's claim that the trial court erred in dismissing counts III and IV is unpersuasive. Neither the case authority it cites nor the policy language it relies upon supports the contention that failing to provide notice of an occurrence to Madison Mutual can preclude coverage for separate, future occurrences.

¶ 52　　　　　As Madison Mutual asserts, "[i]nsurance policy notice provisions impose valid prerequisites to insurance coverage." *West American Insurance Co. v. Yorkville National Bank*, 238 Ill. 2d 177, 185 (2010). "A policy provision requiring notice 'as soon as practicable' means notice must be given 'within a reasonable time.' " *West American Insurance Co.*, 238 Ill. 2d at 185 (quoting *Country Mutual Insurance Co. v. Livorsi Marine, Inc.*, 222 Ill. 2d 303, 311 (2006)). "The purpose of a notice requirement in an insurance policy is to enable the insurer to make a timely and thorough investigation of the insured's claim." (Internal quotation marks omitted.) *American States Insurance Co. v. National Cycle, Inc.*, 260 Ill. App. 3d 299, 310-11 (1994). Such a provision "is a reasonable policy requirement, one which affords the insurer an opportunity to make a timely and thorough investigation and to gather and preserve possible evidence." *Barrington Consolidated High School v. American Insurance Co.*, 58 Ill. 2d 278, 281 (1974). As Madison Mutual also notes, case authority states that "[w]here the insured fails to comply with a notice provision, the insurer will be relieved from its duties to defend and indemnify under the policy."

*Northbrook Property & Casualty Insurance Co. v. Applied Systems, Inc.*, 313 Ill. App. 3d 457, 464 (2000).

¶ 53    Significantly, however, each case Madison Mutual cites in support of its argument involves circumstances where an insurer sought to deny coverage for the same occurrence of which it allegedly did not receive timely notice from its insured. See *Northbrook Property & Casualty Insurance Co.*, 313 Ill. App. 3d at 463 (where insurer sought a judicial declaration that it had no duty to defend or indemnify the insured in litigation because the insured failed to provide timely notice of that litigation); *Country Mutual Insurance Co.*, 222 Ill. 2d at 306-07 (involving the insurer's claim that it had no obligation to defend or indemnify the insured in connection with a lawsuit because the insured failed to inform the insurer of the lawsuit for more than 20 months); *American States Insurance Co.*, 260 Ill. App. 3d at 301 (the insurer sought a declaration that it had no duty to defend or indemnify the insured for claims arising out of a motorcycle accident due to the insured's failure to provide timely notice of such claims); *Barrington*, 58 Ill. 2d at 279-81 (claim by an insurer that it had no duty to defend the insureds in a personal injury suit where it did not receive timely notice of the accident upon which the suit was based); *West American Insurance Co.*, 238 Ill. 2d at 181 (the insurer sought to deny coverage for defamation lawsuit based on lack of timely written notice of the lawsuit by the insured); *American Country Insurance Co. v. Bruhn*, 289 Ill. App. 3d 241, 243-44 (1997) (automobile insurer asserted it had no duty to defend the insured regarding claims that arose out of a hit-and-run accident due to the insured providing untimely notice of the accident); *Equity General Insurance Co. v. Patis*, 119 Ill. App. 3d 232, 234-35 (1983) (the insurer asserted it had no duty to defend insured against a malpractice claim based on untimely notice of that claim); *State Security Insurance Co.*, 145 Ill. 2d at 427-28 (the insurer sought a declaration that it had no duty to defend or indemnify the insureds in a wrongful death

action resulting from a shooting due to the insurer not receiving timely notice of the shooting). Thus, while the cited case authority clearly supports an argument that Carol's failure to provide notice of the March 2020 attack is a defense to coverage for claims arising out of that particular attack, none of the cases Madison Mutual relies upon support the proposition that Carol's failure to provide notice of the March 2020 attack absolves Madison Mutual of any duties under the policy for separate, future occurrences.

¶ 54        In arguing that it raised valid policy defenses, Madison Mutual broadly interprets the policy language stating that (1) an insured has a duty after "an 'occurrence' " to provide written notice to the insurer as soon as practical and (2) Madison Mutual has "no duty to provide coverage under this policy" when the insured's failure to comply with that duty causes prejudice. Specifically, Madison Mutual interprets this language to mean that if it suffers prejudice due to a lack of timely notice, it will have no duty to provide coverage for *any* subsequent occurrence, and not just the specific occurrence of which it was not timely notified. This is not a reasonable interpretation of the policy language.

¶ 55        The policy provision at issue concerns duties relative to individual occurrences and sets forth duties that are consistent with the purpose behind policy notice provisions, *i.e.*, allowing the insurer an opportunity to timely investigate the individual occurrence and to gather and preserve possible evidence related to the individual occurrence. In particular, the policy language requires that the insured's written notice include information on the time, place, and circumstances of the occurrence and the names and addresses of any claimant or witness. Additional responsibilities for an insured under the "Duties After 'Occurrence' " provision are as follows:

> "2. Cooperate with us in the investigation, settlement or defense of any
>     claim or suit;

3. Promptly forward to us every notice, demand, summons or other process relating to the 'occurrence';

4. At our request, help us:

a. To make settlement;

b. To enforce any right of contribution or indemnity against any person or organization who may be liable to an 'insured';

c. With the conduct of suits and attend hearings and trials; and

d. To secure and give evidence and obtain the attendance of witnesses[.]"

¶ 56     When read as a whole, the language of the "Duties After 'Occurrence' " provision supports a finding that it is occurrence-specific. The duties listed are a prerequisite to coverage for the specific occurrence that triggers those duties, not a prerequisite to coverage for separate, future occurrences. Accepting Madison Mutual's interpretation of the policy language would allow it to deny coverage for every subsequent occurrence that might arise under the policy. Here, it alleged that it was prejudiced by Carol's failure to timely notify it of the March 2020 attack due to its inability to discover the pit bull and void the policy before the subsequent attacks in September 2020. Madison Mutual emphasizes on appeal that there were three occurrences in this case that all involved attacks by the same pit bull. However, because Madison Mutual alleges prejudice based on its inability to cancel the policy after learning of the first attack, the same logic would support the denial of coverage for any subsequent occurrence, no matter the underlying facts. This excessively broad interpretation of the policy is not supported by the policy's plain language and is not a reasonable interpretation.

¶ 57     We conclude that although a failure to provide timely notice of the March 2020 attack would serve as a defense to coverage for that particular attack, that same lack of notice does not provide a basis for denying coverage for the subsequent September 2020 attacks. Under the circumstances presented, we hold that Madison Mutual failed to establish that the trial court erred in dismissing counts III and IV of the second amended complaint with prejudice and affirm the court's dismissal order.

¶ 58                                III. CONCLUSION

¶ 59     For the reasons stated, we reverse the trial court's entry of summary judgment in favor of defendants, affirm the court's dismissal of counts III and IV of the second amended complaint, and remand for further proceedings.

¶ 60     Affirmed in part and reversed in part; cause remanded.